Brita ARBOGAST, Plaintiff–Appellant,

v.

Otis R. BOWEN, M.D., Secretary of
Health and Human Services,
Defendant–Appellee.

No. 87–2751.

United States Court of Appeals,
Seventh Circuit.

Argued June 13, 1988.

Decided Oct. 26, 1988.

Agustin G. Garcia, Agustin G. Garcia, P.C., Chicago, Ill., for plaintiff-appellant.

Donna L. Calvert, Asst. Reg. Counsel, Dept. of Health and Human Services, Chicago, Ill., for defendant-appellee.

Before WOOD, Jr., EASTERBROOK, and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Brita Arbogast appeals the denial of her application for social security disability insurance benefits. An Administrative Law Judge (ALJ) determined that Mrs. Arbogast was not disabled under section 223(d)(1) of the Social Security Act, 42 U.S.C. § 423(d)(1). The Department of Health and Human Services Appeals Council (Appeals Council) modified the factual findings of the ALJ but otherwise affirmed his decision. That action constituted the final decision of the Secretary of Health and Human Services (Secretary). On judicial review, the district court affirmed the decision of the Secretary because, in the court's judgment, the Secretary's decision was supported by substantial evidence in the record. We agree and therefore affirm the judgment of the district court.

## I

### Background

Mrs. Arbogast, at the time of her most recent administrative hearing, was a sixty-two year old high school graduate. From 1980 until September 1982, prior to her claimed disability, Mrs. Arbogast was employed as a receptionist in a beauty salon. In 1981, a hyperthyroid condition left Mrs. Arbogast with impaired muscle function in her eyes. She ultimately left her employment because of the deterioration of her vision. Specifically, Mrs. Arbogast testified before the ALJ that she suffered from eye-muscle imbalance, double vision, lack of depth perception, excessive tearing, and headaches.

On September 22, 1983, Mrs. Arbogast filed her application for disability insurance benefits. Her application was denied twice at the administrative level. A hearing then was conducted before an ALJ. The ALJ denied the claim because he found that by "[u]sing an eye patch, thereby creating monocular vision, the claimant retains the capacity to perform any task involved in her past relevant work...." R. 6 at 9. The Appeals Council affirmed. Mrs. Arbogast then sought judicial review before the district court. Both parties filed motions for summary judgment. However, the district

court remanded the case for further fact-finding. Although the ALJ found that Mrs. Arbogast's double vision was alleviated by the use of an eye patch, the court was concerned by the ALJ's failure "to consider consequences of such a course of action alluded to in the testimony, most particularly plaintiff's description of her tearing when she attempted to read with one eye." *Arbogast v. Heckler*, No. 85 C 3974, memorandum and order at 3 (N.D.Ill. Mar. 27, 1986); R. 14 at 3. Accordingly, the court instructed the ALJ on remand to make an explicit finding "as to the nature of the plaintiff's tearing problem and its effect on her total condition." *Id.* at 5.

On remand, the same ALJ conducted a *de novo* review of Mrs. Arbogast's claims and found that the alleged excessive tearing "is not a significant problem and that [Mrs. Arbogast] can dry her tears during the course of the day without significant interference with her activities of her past relevant work...." R. 19 at 161. The Appeals Council modified two of the factual findings of the ALJ, made additional findings, and affirmed the ALJ's decision. Mrs. Arbogast again appealed to the district court. The court granted the Secretary's motion for summary judgment, and denied Mrs. Arbogast's cross-motion for summary judgment. The court noted that "[b]y plaintiff's own testimony, the tearing problem is episodic and is aggravated by reading for a period of time. Again, the relevant work is in a beauty salon, and it does not require prolonged reading. The medical records do not indicate the tearing to be a significant problem." *Arbogast v. Bowen*, No. 85C3974, memorandum and order at 1–2 (N.D.Ill. Oct. 8, 1987); R. 37 at 1–2 [hereinafter Mem. order]. It then concluded that "plaintiff has [not] carried her heavy burden of overturning the ALJ's determination that she can perform her past relevant work." *Id.* at 2.

## II

### Discussion

#### A. *Contentions of the Parties*

Mrs. Arbogast generally contends that the denial of her benefits is not supported by substantial evidence. Specifically, she raises two challenges: First, that the ALJ and the Appeals Council employed a defective analysis in reviewing her claim because they failed to compare the physical demands of her former work with her current capabilities after considering all relevant medical evidence; and second, that the ALJ failed to explicate a "minimal level of articulation" to support his decision concerning her subjective complaints.

The Secretary contends that the decision of the Appeals Council is supported by substantial evidence. In particular, he submits that the ALJ and the Appeals Council properly considered all of the evidence under the appropriate analysis. He also argues that the ALJ is not required to make explicit findings concerning the credibility of a claimant's subjective complaints. The thrust of the Secretary's submission is that the burden to prove disability rests on Mrs. Arbogast; the Secretary does not have to disprove disability.

#### B. *Analysis*

1.

As an initial matter, we note that we review the judgment of the district court. *Imani v. Heckler*, 797 F.2d 508, 510 (7th Cir.), *cert. denied*, 479 U.S. 988, 107 S.Ct. 580, 93 L.Ed.2d 583 (1986); *Schaefer v. Heckler*, 792 F.2d 81, 84 (7th Cir.1986). In so doing, like the district court, we review the final decision of the Secretary to ensure that his decision was supported by substantial evidence. *Ray v. Bowen*, 843 F.2d 998, 1001 (7th Cir.1988); *Burnett v. Bowen*, 830 F.2d 731, 734 (7th Cir.1987); *Bauzo v. Bowen*, 803 F.2d 917, 921 (7th Cir.1986); *see also* 42 U.S.C. § 405(g). The Secretary, in turn, has delegated his authority to make final decisions to the Appeals Council. *See* 20 C.F.R. §§ 404.900, 404.981, 416.1400, 416.1481. We therefore review the decision of the Appeals Council rather than the decision of the ALJ. *Bauzo*, 803 F.2d at 921; *see Parker v. Bowen*, 788 F.2d 1512, 1516–17 (11th Cir.1986) (en banc); *Parris v. Heckler*, 733 F.2d 324, 326 (4th Cir.1984). However, in this case, the Appeals Council

explicitly adopted, as modified, the opinion of the ALJ. Accordingly, we must review the decision of the ALJ as modified by the Appeals Council.

In reviewing the decision of an ALJ, we previously have noted that, "[u]nless there has been an error of law," we cannot overturn his factual findings "if the findings are supported by substantial evidence." *Veal v. Bowen,* 833 F.2d 693, 696 (7th Cir.1987); *see Waite v. Bowen,* 819 F.2d 1356, 1360 (7th Cir.1987); *Delgado v. Bowen,* 782 F.2d 79, 82 (7th Cir.1986) (per curiam). Substantial evidence refers to that quantum of " 'relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion,' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)), "taking into account 'whatever in the record fairly detracts from its weight.' " *Sears v. Bowen,* 840 F.2d 394, 398 (7th Cir.1988) (quoting *Bauzo,* 803 F.2d at 923)); *accord Ray,* 843 F.2d at 1001. "Although this court may not interject its own judgment for that of the administrative law judge, *McNeil v. Califano,* 614 F.2d 142, 145 (7th Cir.1980), we must not simply rubber stamp his decision in the absence of a critical review of the evidence. *Garfield v. Schweiker,* 732 F.2d 605, 610 (7th Cir.1984)." *Veal,* 833 F.2d at 696.

### 2.

In addressing a claimant's contention that she is disabled under the Social Security Act, we previously have summarized the agency regulations, *see* 20 C.F.R. §§ 404.-1520, 416.920, as requiring the factfinder to follow a sequential five-step inquiry.[1] Here, the first three steps of the sequential

inquiry are not in dispute. Accordingly, we proceed directly to step four: Is Mrs. Arbogast unable to perform her former occupation of beauty salon receptionist? In determining whether a claimant is unable to perform his or her former occupation,

> the [factfinder] is required to decide whether the claimant "retains the [residual functional capacity] to perform:
>
> > 1. The actual functional demands in job duties of a particular past relevant job; *or*
> >
> > 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy."

*Orlando v. Heckler,* 776 F.2d [209,] 215 [ (7th Cir.1985) ] (emphasis in original) (quoting Social Security Ruling 82–61 (1980)). This task necessarily entails a comparison of the physical demands of the claimant's past relevant work with her present mental and physical capacity. *Bauzo v. Bowen,* 803 F.2d 917, 925 (7th Cir.1986); *Strittmatter v. Schweiker,* 729 F.2d 507, 509 (7th Cir.1984).

*Veal,* 833 F.2d at 697. The claimant bears the burden of establishing that she is unable to return to her past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287, 2294 n. 5, 96 L.Ed.2d 119 (1987); *Sears,* 840 F.2d at 399.

### 3.

In this case, Mrs. Arbogast essentially contends that the Secretary employed a defective analysis in addressing the step four inquiry. She argues that the ALJ failed to consider that her job as a beauty salon receptionist required her to shampoo and dye hair, which aggravated her visual

---

1. We recently have reaffirmed this sequential five-step inquiry in *Ray v. Bowen,* 843 F.2d 998 (7th Cir.1988):

    (1) Is the claimant presently unemployed?
    (2) Is the claimant's impairment "severe"?
    (3) Does the impairment meet or exceed one of a list of specific impairments?
    (4) Is the claimant unable to perform his or her former occupation?
    (5) Is the claimant unable to perform any other work within the economy?

*Id.* at 1001. "An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled." *Zalewski v. Heckler,* 760 F.2d 160, 162 n. 2 (7th Cir.1985); *accord Veal v. Bowen,* 833 F.2d 693, 695 n. 2 (7th Cir.1987); *Lauer v. Bowen,* 818 F.2d 636, 638 (7th Cir.1987); *Bauzo v. Bowen,* 803 F.2d 917, 920 n. 1 (7th Cir.1986).

impairment by causing excessive tearing.[2] She also asserts that the ALJ and Appeals Council failed to consider all of the relevant medical evidence concerning her inability (1) to "maneuver[ ] in an environment," and (2) to bend and stretch. R. 19 at 198. As a collective result of these errors, Mrs. Arbogast submits that the Appeals Council failed to compare her past relevant work to her present capabilities. *See Strittmatter v. Schweiker,* 729 F.2d 507, 509 (7th Cir. 1984); 20 C.F.R. § 404.1520(e).

### a. failure to consider certain job functions

Mrs. Arbogast first contends that two of the ALJ's findings were erroneous because they included a reference to her past relevant work as a "saleslady," as well as a "receptionist." R. 19 at 162 (emphasis supplied).[3] She argues that this error indicates that the ALJ did not consider "that as a receptionist, Mrs. Arbogast was also required to shampoo and dye hair." Appellant's Br. at 10. As a result, she submits, the ALJ did not consider her evidence "that in order to shampoo and dye hair she was required to use hairspray and chemicals [perm solutions and dyes] [that] would aggravate her eyes." *Id.* at 12.

2. Mrs. Arbogast could alleviate her double vision problem by wearing an eyepatch. However, it is her contention that covering one eye makes her other eye very susceptible to tearing when exposed to beauty salon chemicals.

3. The two factual findings set forth by the ALJ were as follows:
   6. The claimant's past relevant work as receptionist, and the job of saleslady, do not require the performance of work-related activities precluded by the above limitation(s) (20 CFR 404.1565).
   7. The claimant's impairment does not prevent the claimant from performing her past relevant work, or the job of saleslady.
   R. 19 at 162.

4. The Appeals Council then modified these findings in the following manner:
   The Appeals Council hereby modifies Finding Number 6 to state that the claimant's past relevant work as a receptionist and shampoo person in a beauty salon did not require the performance of work-related activities precluded by the limitations cited. Finding Number 7 is modified to state that the claim-

■ Initially, we note that Mrs. Arbogast concedes that the Appeals Council modified the findings of the ALJ by deleting the reference to the job of saleslady.[4] *Id.* at 10. She also explicitly admits that the Appeals Council "recognized" that "as a receptionist the Appellant was *also required* to *shampoo* and *dye hair. Id.* at 8. As already noted, in this case, we must review the decision of the ALJ as *modified* by the Appeals Council. Therefore, there can be no claim that the Appeals Council was unaware of her allegation, or that the ALJ committed reversible error. *See Ray,* 843 F.2d at 1001 n. 7 (because we review the decision of the Appeals Council, any alleged error committed by the ALJ "is irrelevant").

■ As to the merits of her argument, other than her own testimony, Mrs. Arbogast introduced no "objective medical evidence," *see* 42 U.S.C. § 423(d)(5)(A); *Meredith v. Bowen,* 833 F.2d 650, 654 (7th Cir. 1987), to support her claim that the chemicals at the beauty salon would aggravate her eye condition.[5] Yet, we note that Dr. Philip Dray, Mrs. Arbogast's treating physician, checked a box marked "Yes" on a preprinted ophthalmological form which questioned whether the claimant's "visual

ant's impairment does not prevent her from performing her past relevant work. *Id.* at 152.

5. Despite the lack of objective medical evidence, we previously have noted that a "claimant may prove that she is 'disabled' within the SSA [Social Security Act] by subjective complaints if she shows: 1) evidence of an objectively adduced abnormality *and, either* 2) objective medical evidence supporting the subjective complaints issuing from that abnormality, *or* 3) that the abnormality is of a nature in which it is reasonable to conclude that the subjective complaints are a result of that condition." *Veal v. Bowen,* 833 F.2d 693, 698 (7th Cir.1987); *see Sparks v. Bowen,* 807 F.2d 616, 618 (7th Cir.1986). However, Mrs. Arbogast has failed to meet her burden. Even if her subjective complaints were credible, she has introduced neither medical evidence establishing that beauty salon chemicals generally affect adversely individuals with vision problems like her's, nor evidence showing that her problems are a product of the chemicals. *See* R. 19 at 159 (ALJ's determination that etiology of Mrs. Arbogast's vision impairment is ocular muscle imbalance).

function [will] be further impaired by prolonged or occasional: ... Irritants." R. 6 at 131. However, "[w]here diagnoses are not supported by medically acceptable clinical and laboratory diagnostic techniques, this court need not accord such diagnoses great weight." *Veal*, 833 F.2d at 699; *see Strunk v. Heckler*, 732 F.2d 1357, 1362 (7th Cir.1984); *see also* 42 U.S.C. § 423(d)(5)(A). Here, of course, Dr. Dray did not even go so far as to make a diagnosis concerning the "irritants." Nor is there any indication that Dr. Dray performed clinical and/or diagnostic tests to check for any adverse effect of irritants on Mrs. Arbogast's vision. Moreover, the irritants that potentially are harmful to Mrs. Arbogast are not specified on the preprinted form. Certainly, there is no evidence that such exposure to beauty salon chemicals would aggravate her eye condition, much less render her disabled. We also note that the etiology of Mrs. Arbogast's visual impairment is an "ocular muscle imbalance" rather than environmental conditions in the workplace. R. 19 at 159. Finally, we are aware that Mrs. Arbogast's main function at the salon was to act as a receptionist; the job of shampooing and dying hair clearly was ancillary.[6]

b. failure to consider medical evidence

Mrs. Arbogast next contends that the Appeals Council "did not consider the fact that the Appellant has difficulty maneuvering in an environment." Appellant's Br. at 11. She submits that the Appeals Council simply ignored the opinion of one of her treating physicians, Dr. Susan Anderson–Nelson. Dr. Anderson–Nelson had indicated in a report that Mrs. Arbogast has "severe strabismus [involuntary deviation of the eye] & diplopia [double vision] constantly[, therefore she] has no depth perception & has difficulty maneuvering in an environment." R. 19 at 198. Dr. Anderson–Nelson also responded "Yes" to the question on a preprinted form: "Will lifting, stretching, pushing, pulling, stooping, or prolonged reading aggravate eye condition?" *Id.* In addition, Mrs. Arbogast testified before the ALJ that she never rode public transportation for fear that she would injure herself because of her poor eyesight. The ALJ noted this testimony in his decision. *Id.* at 160.

■ Concerning Dr. Anderson–Nelson's conclusion that Mrs. Arbogast has difficulty maneuvering in an environment, neither the ALJ nor the Appeals Council addressed the matter specifically. However, in summarizing the medical report of another physician, Dr. L. George Bendikas, the ALJ noted, "Dr. Bendikas confirmed the claimant's double vision; however, he believed this condition could be significantly alleviated upon closing or covering one eye." *Id.* at 161. The ALJ then found that

the claimant's episodes of double vision can be corrected by covering one eye. This can be accomplished quite easily by using a cap over one lens. This procedure is commonly used to correct double vision and uses only a simple and uncomplicated device. The claimant has some problems with depth perception, a problem which would be exacerbated by the use of a cap covering one lens; however, reading and other ordinary visual tasks could be performed with the use of only one eye without significant difficulty.

*Id.* Accordingly, by his reference to Mrs. Arbogast's double vision and depth perception problems, it is clear that the ALJ was aware of Mrs. Arbogast's difficulty in maneuvering in an environment. He was not persuaded, however, that such difficulty rendered her disabled. Moreover, there is no suggestion on appeal that Mrs. Arbo-

---

6. We also are aware, as the Secretary argues in a footnote, that Mrs. Arbogast is not disabled if she can perform her former relevant work "'as generally required by employers throughout the national economy.'" *Orlando v. Heckler*, 776 F.2d 209, 215 (7th Cir.1985) (quoting Social Security Ruling 82–61 (1980)). Although the Dictionary of Occupational Titles does not list a job titled "beauty salon receptionist," it does list many types of receptionist jobs, none of which expose the worker to "chemicals" at the office. Accordingly, even if we determined that Mrs. Arbogast met her burden of proving that she was not capable of returning to her former job at the beauty salon because of the chemicals, we would find that she is capable of performing her past relevant work—receptionist—as defined generally in the national economy.

gast's visual impairment would not be alleviated significantly by covering one eye. Finally, even though Mrs. Arbogast might have difficulty with depth perception, as the district court noted, "monocular vision is something many people learn to live with, coping by being somewhat deliberate and cautious." Mem. order at 1. We believe that the evidence substantially supports the finding of the ALJ, which was adopted by the Appeals Council.

■ As to Dr. Anderson–Nelson's notation that lifting, stretching, etc. would aggravate Mrs. Arbogast's condition, the Appeals Council concluded that Mrs. Arbogast "stated that the position required bending. Bending was not proscribed by either physician."[7] R. 19 at 152. The preprinted question is not unambiguous; it fails to specify which of the listed activities might aggravate Mrs. Arbogast's vision. Moreover, the Appeals Council noted that the activities she performed at home (light housekeeping) are not incompatible with the job of a receptionist. We also note that Dr. Anderson–Nelson's report does not indicate that her answer to the preprinted question was a result of any clinical or diagnostic testing of Mrs. Arbogast. See Veal, 833 F.2d at 699; Strunk, 732 F.2d at 1362. Furthermore, there is no evidence in the record indicating the extent of any harm to Mrs. Arbogast's eye condition that would be precipitated by the listed activities. Viewing the record in its entirety, we conclude that the Appeals Council properly considered all of the relevant evidence and compared the physical demands of her former work with her present capabilities; see Strittmatter, 729 F.2d at 509; accord Veal, 833 F.2d at 697. Its decision on this issue is supported by substantial evidence.

### 4.

Mrs. Arbogast's final contention on appeal is that the ALJ failed to make an express credibility determination of her subjective complaints. As a result, she submits that the Secretary failed to provide a "minimal level of articulation," see Zalewski v. Heckler, 760 F.2d 160, 166 (7th Cir.1985), concerning her subjective testimony. The Secretary submits that we do not require ALJs to make express credibility findings. He then argues that both the ALJ and the Appeals Council addressed the credibility of Mrs. Arbogast's testimony.

■ We previously have noted that, where the reasoning of the ALJ's decision is apparent, we do not require the ALJ to articulate explicitly his credibility determinations. See Imani v. Heckler, 797 F.2d 508, 511 (7th Cir.), cert. denied, 479 U.S. 988, 107 S.Ct. 580, 93 L.Ed.2d 583 (1986); cf. Daniel v. Secretary of Health and Human Servs., 647 F.Supp. 1209, 1211 (E.D. Mich.1986) (noting, without disapproval, that ALJ failed to make credibility determination concerning claimant's subjective complaints). Nevertheless, it is clear that the ALJ and the Appeals Council considered the subjective complaints of Mrs. Arbogast, and failed to find them credible. It further appears that the factfinders found that Mrs. Arbogast had failed to prove that she was disabled despite her testimony. For instance, the ALJ stated that he "carefully considered all the evidence of record and the testimony at the hearing." R. 19 at 160. He also noted that Mrs. Arbogast suffered from double vision, lack of depth perception, and an episodic tearing problem—the crux of Mrs. Arbogast's testimony. He further found, "[a]t the hearing, the claimant testified that the tearing of her eyes was only episodic and minor and was only exacerbated by prolonged reading." Id. at 161. He also observed that Mrs. Arbogast did not have a tearing problem at the hearing. Similarly, in addressing the objection of Mrs. Arbogast's counsel to the ALJ's credibility determination, the Appeals Council concluded that the ALJ "relied on the claimant's testimony that tearing was not a

---

7. In addition to the report of Dr. Anderson–Nelson, the record contains a preprinted form signed by a Dr. Becker. Dr. Becker also answered "Yes" to the lifting, stooping, etc. question. R. 6 at 149. However, for the same reasons articulated in reference to Dr. Anderson–Nelson's report, we find Dr. Becker's report insufficient to overturn the considered judgment of the district court.

constant problem in assessing the restrictions imposed by her impairment." *Id.* at 152. It also appears that the Appeals Council at least considered Mrs. Arbogast's testimony in rejecting her argument that Dr. Anderson–Nelson's medical report established that she could not lift, stretch, bend, etc. *See Imani,* 797 F.2d at 512 ("Unless the ALJ's assessment of the witness is patently wrong in view of the cold record before us, it must stand."). The record indicates that the ALJ and the Appeals Council properly considered and assessed Mrs. Arbogast's credibility with at least a "minimal level of articulation." *See Zalewski,* 760 F.2d at 166.[8]

### Conclusion

Because the decision of the ALJ, as modified and adopted by the Appeals Council is supported by substantial evidence in the record, we affirm the judgment of the district court.

AFFIRMED.

---

**8.** Our result here is not inconsistent with our previous holding in *Orlando v. Heckler,* 776 F.2d 209 (7th Cir.1985), wherein we noted that "[t]o reject the claimant's testimony about his or her physical condition, the administrative law judge must specifically conclude that the claimant's testimony is not credible." *Id.* at 213. Here, we do not conclude that the ALJ, or the Appeals Council, rejected the testimony of Mrs. Arbogast. Indeed, Mrs. Arbogast claims that the ALJ explicitly found her testimony credible at the first hearing which subsequently was remanded by the district court. The ALJ's decision after the second hearing, therefore, indicates that he did not dispute the maladies claimed by Mrs. Arbogast; rather, he merely disagreed with her contention that, as a result of her vision impairment, she was disabled from returning to her past relevant work.