**Stephen T. HUDACEK, Plaintiff,**

v.

**Louis W. SULLIVAN, Secretary, Health and Human Services, Defendant.**

**No. 90–C–332–S.**

United States District Court,
W.D. Wisconsin.

Sept. 19, 1990.

James W. Balmer, Falsani, Balmer, Berglund & Merritt, Duluth, Minn., for plaintiff.

Cheryl B. Schacht, Ass't. U.S. Atty., Madison, Wis., for defendant.

ORDER

SHABAZ, District Judge.

Plaintiff Stephen Hudacek brings this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the defendant Secretary denying him Social Security disability insurance benefits. He asks the Court to reverse the Secretary's decision or, in the alternative, to remand this matter to the Secretary for further evidentiary proceedings.

Plaintiff first applied for disability insurance benefits on February 4, 1987 alleging disability due to upper back pain. Following two denials by the agency and an administrative hearing, an ALJ issued the Secretary's final decision finding that plaintiff was not disabled on September 17, 1987. This decision was not appealed.

On June 6, 1988 plaintiff filed for disability insurance benefits and supplemental security income alleging disability due to upper back pain. A hearing was held before an administrative law judge (ALJ) on April 5, 1989. The ALJ decided on April 27, 1989 that plaintiff was not disabled. The ALJ's decision became the final decision of the Secretary on April 16, 1990 when the Appeals Council affirmed the ALJ's decision except for finding that the September 17, 1987 decision was *res judicata* on the issue of plaintiff's disability on or before that date.

FACTS

Plaintiff Stephen Hudacek was born on September 12, 1930 and has a eleventh grade education. His past relevant work experience was maintenance mechanic at the University of Wisconsin–Superior, which involved such tasks as setting pumps and millwright work.

On November 29, 1984, plaintiff's treating physician, Dr. Donley, diagnosed his physical condition as marked degenerative disc disease with moderately severe cervical spondylosis/stenosis. In October 1985 Dr. Donley examined plaintiff for a limp which he suspected was related to the degenerative disc disease. Dr. Donley saw plaintiff again on May 22, 1986 for progressive symptomatology related to cervical spondylosis which was confirmed by a June 3, 1986 cervical myelogram. In December 1986 Dr. Donley reexamined plaintiff for severe cervical spondylosis.

A functional capacity assessment was performed on plaintiff on December 30 and 31, 1986 at the Polinsky Medical Rehabilitation Center. It was determined that plaintiff could adequately perform the following activities: sitting, standing, walking, hand coordination, repeated forward bending, bilateral pinch strength and ladder climb. He could lift ten pounds frequently, lift and carry twenty-five pounds, and stand-up lift ten to fifteen pounds. Plaintiff did not exhibit pain behavior during the testing. It was recommended that plaintiff avoid overhead work, twisting of the trunk or neck, jarring or pulling activities and work on slippery surfaces.

On November 12, 1987 Dr. Donley examined plaintiff. He reported that plaintiff had the same degenerative arthritic changes and neck complaints as before. His neurological, sensory and musculatory examinations were all normal. An x-ray revealed no significant change. On April 20, 1988, when Dr. Donley examined plaintiff, he found that plaintiff's mobility of his cervical and lumbar spine was limited by 50% as he had previously found on February 19, 1987.

Dr. Donley wrote a report on November 18, 1989 which was considered by the Appeals Council as evidence. This report indicated that plaintiff had cervical spondylosis with stenosis and decreased range of motion of the cervical spine with chronic neck pain. He also stated that plaintiff was limited in his ability to twist and turn his neck and that he should avoid jarring his neck. Dr. Donley found that plaintiff's hand fatigability was related to his cervical spondylosis.

In February 1988 plaintiff was hospitalized for five days for alcoholic pancreatitis and alcoholic hepatitis. On August 28, 1988, Jean Warrior, Ph.D., completed a Psychiatric Review Technique Form after evaluating plaintiff for a potential substance abuse disorder. She found that he had a slight restriction of daily living activities, no difficulties in maintaining social functioning, no deficiencies in concentration or pace and no episodes of deterioration or decompensation in a work like setting. She concluded that plaintiff had an impairment which was not severe.

At the April 5, 1989 administrative hearing plaintiff, who was represented by counsel, testified that his condition had worsened since the first hearing, that he suffered from low back pain and that his neck was sore all the time. He stated that he took over-the-counter medications like Anacin and aspirin to relieve the pain in his neck. Plaintiff testified that he has to take a two hour nap every day due to fatigue. He also stated that he went to the tavern for a couple of hours a day.

A vocational expert, Mr. Edward Utities, testified at the first hearing that plaintiff had acquired certain mechanical abilities that were readily transferrable with very little vocational adjustment to light work including ventilation equipment tender, diesel plant operator, substation operator helper, gas dispatcher, gas pumping station operator, boiler house inspector and troubleshooter. At the April 5, 1989 hearing Mr. Utities testified that based on the medical evidence and the plaintiff's testimony he could still perform these jobs. In response to a question by plaintiff's attorney Mr. Utities stated that if plaintiff had to take a two hour nap each day he would not be able to perform these jobs.

The ALJ found that the plaintiff had severe degenerative disc disease and that his residual functional capacity to do light work had not changed since the Secretary's September 17, 1987 decision. He further found that, although plaintiff was precluded from performing his past relevant work, jobs existed in the national economy which plaintiff could perform. The ALJ found that the medical evidence did not support plaintiff's claim that he had to take a two hour nap every day. He also found that plaintiff had not alleged any vocational problems with alcohol abuse.

The ALJ made the following findings:

1. The claimant met the disability insured status requirements of the Act on July 8, 1986, the date the claimant stated he became unable to work, and continues to meet them through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since July 8, 1986.

3. The medical evidence establishes that the claimant has severe degenerative disc disease of the cervical spine and cervical spondylolitis, but that he does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4. The claimant's statements as to the level, severity and degree of pain and functional limitations is not supported by the medical evidence of the record. His claim of limited abilities to sit, stand and walk are inconsistent with written statements of record and results of functional capacities assessments performed in December 1986. The claimant takes no pain relief medication other than over-the-counter analgesics nor does he receive therapy or employ any other regular treatment for pain.

5. The claimant has the residual functional capacity to perform the exertional and nonexertional requirements of work except for lifting, carrying and handling objects weighing greater than 20 pounds, working with his arms above shoulder level, twisting of the neck or back, working around dangerous machinery, or working in situations where he would be exposed to jarring, sudden movements or at risk for extension injuries of the cervical spine. (20 CFR 404.1545 and 416.-945).

6. The claimant is unable to perform his past relevant work as a maintenance mechanic.

7. The claimant's residual functional capacity for the full range of light work is reduced by his inability to work with his arms above shoulder level, twist the neck or back, work around machinery, work where he would have to move suddenly, or in situations where he would be jarred or at risk for injuries to the cervical spine.

8. The claimant is 58 years old, which is defined as an individual of advanced age (20 CFR 404.1563 and 416.963).

9. The claimant has less than a high school education (20 CFR 404.1564 and 416.964).

10. The claimant has acquired work skills, such as mechanical abilities, ability to use tools, ability to diagnose and repair problems, and ability to read meters and gauges, which he has demonstrated in past work, and which, considering residual functional capacity, can be applied to meet the requirements of light work activities of other work (20 CFR 404.1568 and 416.968).

11. Although the claimant's additional limitations do not allow him to perform the full range of light work, there are significant number of jobs in the national economy which he could perform. Examples of such jobs are: a ventilation equipment tender, diesel plant operator, substation operator helper, gas dispatcher, gas pumping station operator, boiler house inspector and troubleshooter I.

12. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

## OPINION

■ This Court must determine whether the decision of the Secretary that plaintiff was not disabled is based on substantial evidence pursuant to 42 U.S.C. § 405(g). *See Arbogast v. Bowen,* 860 F.2d 1400, 1402–1403 (7th Cir.1988). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richard-*

*son v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

Disability determinations are made pursuant to a five-step sequential evaluation procedure. 20 C.F.R. § 404.1520(a)–(f). First, the claimant must not be performing substantial gainful activity. Second, the claimant must have a severe, medically determinable impairment. Third, a claimant will be found disabled if his or her impairment is equal in severity to a listed impairment in 20 C.F.R. Subpart P, Appendix 1. Fourth, if the claimant does not meet the third test, he/she must not be able to perform his/her past work. Fifth, if the claimant cannot perform his/her past work, he or she must not be able to perform any existing jobs available in the national economy given his or her educational background, vocational history and residual functional capacity.

In this case, the ALJ reached the fifth step and found that given plaintiff's educational background, vocational history and residual functional capacity he was able to perform existing jobs available in the national economy. Plaintiff argues that there is not substantial evidence in the record to support the ALJ's decision.

■ The ALJ relied on the testimony of the vocational expert to find that there were jobs available in the national economy that plaintiff could perform. For the vocational expert's response to be considered substantial evidence the ALJ's hypothetical question should adequately address the plaintiff's characteristics. *See Waite v. Bowen,* 819 F.2d 1356, 1361 (7th Cir.1987). If the expert was present during the hearing and reviewed the medical evidence, it is presumed that his response included all of plaintiff's difficulties. *Id.* The Court finds that the vocational expert's response is substantial evidence to support the ALJ's decision because the hypothetical question adequately addressed the plaintiff's characteristics.

The vocational expert testified at the first hearing that plaintiff had acquired certain mechanical abilities that were readily transferable with very little vocational adjustment to light work jobs. At the sec-

ond hearing the expert concluded that plaintiff could still perform these jobs. This testimony is substantial evidence to support the ALJ's decision that plaintiff's skills were readily transferable with very little vocational adjustment to jobs available in the national economy.

Plaintiff had the burden of demonstrating through objective medical evidence that his condition had deteriorated after the September 17, 1987 decision finding him not disabled. *See Lyle v. Secretary of Health and Human Services,* 700 F.2d 566, 568 (9th Cir.1983). Plaintiff claimed that his condition had worsened because he was in more pain and had fatigue requiring him to take a two hour nap a day.

Plaintiff's subjective complaints of pain and fatigue are not supported by the medical evidence in the record. He does not take prescription pain medication or receive physical therapy or any other treatment for pain. The medical evidence for the time period after September 17, 1987 does not indicate any change in plaintiff's physical condition which would cause more pain or fatigue.

The ALJ's assessment of credibility must be affirmed unless this Court finds that it is patently wrong. *Kelley v. Sullivan,* 890 F.2d 961 (7th Cir.1989), citing *Anderson v. Bowen,* 868 F.2d 921 (7th Cir. 1989). The ALJ in his decision gives his reasons for finding plaintiff's testimony to be incredible. Specifically, he finds that plaintiff's allegations of disabling pain and limitation of function are inconsistent with the medical evidence and the fact that he does not take prescription pain medication.

The ALJ is entitled to reject subjective complaints where these complaints are not supported by adequate medical evidence. *Arbogast v. Bowen,* 860 F.2d 1400, 1404–1405 (7th Cir.1988). The ALJ's finding that plaintiff's testimony was not credible as to pain and fatigue was not patently wrong. The Court concludes that there is substantial evidence to support the Secretary's decision that plaintiff's physical condition had not deteriorated since September 17, 1987.

The Secretary's decision finding plaintiff not disabled was supported by substantial evidence. Accordingly, his decision will be affirmed.

## ORDER

IT IS ORDERED that the plaintiff's motion to reverse the Secretary's decision is DENIED.

IT IS FURTHER ORDERED that the Secretary's decision denying plaintiff disability insurance benefits and supplemental security income is AFFIRMED.