**Ruby BROOKS, Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.**

**No. 90 C 5328.**

United States District Court, N.D. Illinois, E.D.

May 1, 1991.

Frederick J. Daley, Chicago, Ill., for plaintiff.

Michele M. Fox, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Ruby Brooks ("Brooks") seeks judicial review of a final decision of the Secretary

of Health and Human Services ("Secretary") denying Brooks' claim for supplemental security income ("SSI") benefits under the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423 and 1381a.[1] As is customary in these cases, the parties have filed Fed.R.Civ.P. ("Rule") 56 cross-motions for summary judgment.[2] For the reasons stated in this memorandum opinion and order, Brooks' motion is granted and Secretary's is denied.

### *Facts*

### *Work Background and Medical History*

Brooks, born on February 16, 1933, was 57 years old at the time of Secretary's decision. She had received seven and a half years of formal education. Her most recent job was working as a lining presser for Hart, Schaffner and Marx in Chicago, Illinois from 1974 until November 1988. In that month she became ill at work, and she was later placed on long-term disability from her job.

Brooks' work as a presser of suit jacket linings required her first to lift and carry bundles of jackets weighing more than 20 and up to 25 pounds every 1 to 2 hours and then to press the linings of the jackets. At her hearing before Administrative Law Judge ("ALJ") Byron Samuelson, the ALJ and Brooks' attorney questioned her about the weight of the bundles she was required to lift (R. 27):

Q Now when you say heavy, would it [be] more or less than 20 pounds?
A Sure.
Q Okay. Would it be—
ALJ: More or less?

CLMT [Brooks]: More.
ALJ: More?
CLMT: More.
BY ATTORNEY:
Q Okay. Going up to how much, would it [be] more or less than 25 pounds?
A No, I don't think so, maybe—
Q So the—how often would you have to lift up to 25 pounds?
A It's whatever you'd say as the boss, I do piecework—I done piecework, rather. So fast as these things run by.
Q Then you just pick up another one?
A Right. You reach over to the next land and get another bundle. It keeps moving.

That testimony is wholly consistent with Brooks' initial complaint in her Disability Report ("DR") (R. 77), in which she stated that the heaviest weight lifted and the weight frequently lifted was between 20 and 25 pounds.[3] Brooks' job further required her to stand all day and to walk, bend and reach in order to pick up the bundles of jackets.

Brooks also testified at her hearing that she suffered from shortness of breath, lack of strength and chest pain when she got excited, and that she often got nervous (R. 29–30, 32, 41). She testified that she could not perform her past job because it was too hot and too stressful (R. 33) and that she could no longer "keep up" the pace on the line, where speed was a requisite part of her piecework job, in which other people on the end of the production line were dependent on her productivity (R. 33). Brooks reported that she could walk only about

---

1. All further statutory references will take the form "Section—," using the Title 42 numbering rather than the Act's internal numbering. All portions of 20 C.F.R. Part 404 will be cited simply "Reg. § —."

2. What follows in the "Facts" section of this opinion is really not in dispute, so that the usual need for this Court to adopt a Janus-like set of dual perspectives on cross-motions for summary judgment (see *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991), requiring courts to draw "those inferences that are reasonable" in the light most favorable to each nonmovant) poses no problem in this case. All citations to the Administrative Record (the sole

point of reference needed to decide the issues) will be in the form "R.—."

3. Indeed, the more–than–20–pound demands of the job are underscored by the fact that the DR form was a printed form that called for the circling of multiple choice items and the checking of boxes among other multiple choice items. In the "Heaviest Weight Lifted" category, the successive boxes were "20 lbs." and "50 lbs." And the form was filled out by putting an "x" in the box next to the first item *and* by inserting a handwritten "–25 lbs." on the same line—obviously not a random or thoughtless choice between limited alternatives.

half a block and could now do only minimal lifting, but that she had no problem in sitting (R. 34, 36, 38). Brooks also testified that she had back problems that precluded her from returning to her previous job.

Brooks was first treated for her medical problems on November 10, 1988, when the treatment note said that she complained of shortness of breath, palpitations, and "intermittent chest tightness" (R. 88). She was diagnosed as having hypertension and possible coronary artery disease ("CAD") (*id.*). On November 21, 1988 Brooks underwent a treadmill exercise test to evaluate the CAD diagnosis. That test was terminated after nine minutes because of shortness of breath. Brooks did not, however, experience chest pain. Dr. Lalchand Goyal, a cardiologist, reported that the test was "borderline positive for ischemia at optimal level of exercise," but that Brooks retained a "good exercise capacity[, n]ormal heart rate and blood pressure response," and she had "no arrhythmias at rest or at exercise" (R. 93).

Brooks was hospitalized for further evaluation on December 8 and 9, 1988. She was discharged with diagnoses of CAD and hypertension. On December 20, 1988 Dr. J. Castaneda confirmed those diagnoses and reported (R. 114) that Brooks' left posterior descending coronary artery had an 80% occlusion. He also reported that Brooks' blood pressure was above normal and that she had experienced chest pain, which had been fully alleviated by prescriptions of Cardizem and aspirin. Dr. Castaneda related that he was not aware that Brooks had any back pain or any other problems that would limit her work-related activities, and he had noted no abnormal clinical findings in that respect.

Brooks underwent a successful angioplasty on her distal right coronary artery on January 5, 1989. That operation reduced the narrowing of Brooks' artery from 90% (which had been a later angiogram reading) to 15% (R. 119). On February 9, 1989 she took another treadmill exercise test, which again lasted only nine minutes due to Brooks' general fatigue. Dr. Maria H. Balkoura said that Brooks had a hypertensive response, but that she displayed good exercise tolerance, with no chest pain or arrhythmia (R. 120). Brooks stated that after the surgery she continued to have the same problems that she had before (R. 29–30).

Brooks' residual functional capacity ("RFC") was evaluated twice. On the first occasion, December 28, 1988, a non-examining physician Dr. Albert Kwedar concluded that Brooks was limited to maximum lifting and carrying of 20 pounds, frequent lifting and carrying of 10 pounds and standing/walking about 6 hours per 8 hour day (R. 115). That combination of factors meant that Brooks could perform "light work."[4] Then on March 15, 1989—after the angioplasty—Dr. José Luis González concurred in the earlier assessment, noting however that Brooks could only push or pull hand and/or foot controls up to 20 pounds (R. 143). Dr. González also agreed that Brooks could perform light work.

*SSI Proceedings*

Brooks filed for disability insurance benefits ("DIB") on November 14, 1988 (R. 47–49), based on alleged medical conditions of high blood pressure, back trouble and heart trouble (R. 72). She stated (*id.*):

I get dizzy, my back hurts and I experience shortness of breath.

---

4. Reg. § 1567(b) defines "light work" this way:
 *Light work.* Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.
 "Medium work" is more demanding (*id.* § 1567(c)):
 *Medium work.* Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

She also complained that she experienced chest pains (R. 41) that were relieved by medication (R. 42).

On September 1, 1989 Brooks, with the aid of counsel, presented her case to the ALJ, who issued a written decision on November 29, 1989 denying Brooks' application. In addition to Brooks' own testimony at the hearing, elicited both by her attorney and by direct questioning from the ALJ, the administrative record contains several physicians' reports as well as various test results. Based on that record the ALJ found that Brooks had both CAD and hypertension, but he also decided that Brooks' claim that her work ability was limited by back pain was not supported by medical evidence (R. 16) and that her testimony about her alleged limitations due to chest pains was not credible because similarly unsupported (R. 17).

ALJ Samuelson adopted Brooks' characterization of her past relevant work and found that it was light to medium work. He found that Brooks retained the RFC for work-related activities except for lifting greater than 25 pounds. From that the ALJ concluded that Brooks could function in her past relevant work as a lining presser, thereby ruling out a finding of disability (R. 11–17). That determination became Secretary's final decision on August 7, 1990 when the Appeals Council denied Brooks' request for review (R. 2–3).

### Standards for Decision

Section 423(d)(1)(A) defines disability as: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months....

Secretary (and the ALJ before that) must apply a five-step test to determine whether a claimant is disabled (*Pitts v. Sullivan*, 923 F.2d 561, 564 (7th Cir.1991) (citations omitted)):

The following steps are addressed in order. (1) Is the claimant presently employed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work in the economy? 20 C.F.R. §§ 404.1520, 416.920. Once a claimant establishes proof regarding steps one through four, the claimant's burden of proof is met. The burden then shifts to the Secretary to prove that the claimant remains capable of performing other work in view of the vocational factors of age, education, and work experience.

Affirmative answers to those questions lead either to the next step or, at steps 3 and 5, to a finding that the claimant is disabled. Any negative answer, other than at step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

In challenging the ALJ's conclusion that she is not disabled, Brooks bears the burden of proof (*Mathews v. Eldridge*, 424 U.S. 319, 336, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)). This Court must defer to the ALJ's factual conclusions and has explained that deference in these terms (*Jones v. Bowen*, 699 F.Supp. 693, 695 (N.D.Ill.1988)):

[A]n ALJ's ... answer [at any step] must be upheld if supported by substantial evidence (*Walker v. Bowen*, 834 F.2d 635, 639 (7th Cir.1987)). That review does not call for reweighing the evidence. If reasonable minds may differ on the outcome of conflicting evidence, the ALJ's decision prevails (*id.* at 640).

As for the concept of "substantial evidence," *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938), teaches that it means:

more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

That definition regularly finds its way into Social Security opinions in this Circuit, whether upholding or overriding Secre-

tary's decisions (see, e.g., *Pitts*, 923 F.2d at 564).

### Applying the Statutory–Regulatory Framework

■ Brooks' disability claim includes four separate types of medical problems: chest pain, back trouble, heart problems and high blood pressure. ALJ Samuelson found that the first two did not exist, and the record supports his findings. First, whatever chest pain Brooks might have had, it was reasonable to conclude that the prescribed medication fully alleviates such pain—thus negating any disability from that source. Second, no objective medical symptoms confirm that Brooks has any back pain. In fact, examining physician Dr. Castaneda stated (R. 114):

> I am not aware of any back problem and have not noted any abnormal findings on clinical exam regarding her back.

Hence, the only witness to Brooks' back or chest pains was Brooks herself, whom the ALJ did not believe.[5] *Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir.1989) (citations omitted) explains:

> The ALJ is allowed to weigh and consider evidence and make credibility judgments about evidence. The ALJ's credibility determinations concerning lay witnesses must be given great deference by this court. Such a credibility finding will not be overturned absent a finding that the determination was "patently wrong in view of the cold record before us."

ALJ Samuelson's decision in those two respects—as to chest pain and back trouble—is not "patently wrong," but is rather supported by evidence in the record. Those findings are therefore upheld.

In deciding the remaining two issues—the alleged disability due to heart and blood pressure problems—the ALJ (and hence Secretary) made his decision at step 4 of the familiar 5–step inquiry. In determining at step 4 whether a claimant is able to perform his or her former occupation,

Secretary must evaluate (Reg. § 1520(e); 42 C.F.R. § 416.920(e)):

> 1. the physical and mental demands of claimant's former occupation; and
>
> 2. claimant's RFC, a medical assessment of claimant's capacity for work despite his or her limitations (42 C.F.R. § 416.945(a)).

Those determinations by the ALJ (and therefore Secretary) will be dealt with in turn.

### Brooks' Former Occupation

One prong of Secretary's two-part step 4 evaluation is to determine the "work [claimant has] done in the past" (Reg. § 1520(e); 42 C.F.R. § 416.920(e)). On that score Social Security Ruling ("SSR") 82–61 (given express sanction in *Veal v. Bowen*, 833 F.2d 693, 697 (7th Cir.1987)) gives guidance to ALJs in its "Policy Statement" section:

> Under sections 404.1520(e) and 416.920(e) of the regulations, a claimant will be found to be "not disabled" when it is determined that he or she retains the RFC to perform:
>
> 1. The actual functional demands and job duties of a particular past relevant job; *or*
>
> 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

As for the first of those two comparisons, *Steward v. Bowen*, 858 F.2d 1295, 1299–1300 (7th Cir.1988) has said:

> To determine if a claimant is capable of performing his or her past relevant work, an ALJ must compare the demands of the claimant's past occupation with his or her present capacity. *Strittmatter v. Schweiker*, 729 F.2d 507, 509 (7th Cir.1984).

Clearly the ALJ did just that (R. 16, emphasis added):

> Since the claimant's *past relevant work,* as described by the claimant, was of a *light to medium exertional level,* requir-

---

**5.** Furthermore, Section 423(d)(5)(A) expressly says that testimony as to pain "shall not alone be conclusive evidence of disability"—there must also be corroborative objective "medical signs and findings."

ing lifting a maximum of approximately 20 pounds at a time, the Administrative Law Judge finds that the claimant is capable of performing her past relevant work as a lining presser. On this basis, the Administrative Law Judge finds that the claimant cannot be found to be disabled.

ALJ Samuelson explained that he relied on Brooks' description of her past work. But both in her testimony and in her initial DR, Brooks stated that her past job required that she lift clothing bundles of *more* than 20 and up to 25 pounds (and see n. 3).[6] It is significant that the ALJ found that the exertion level of Brooks' former job was "light to medium." According to Reg. § 1567(b) and (c) that more–than–20–pound level of exertion exceeds light work—it is clearly within the range of medium work. Yet the ALJ was consistent in his blurring of the line of demarcation: In the only other two instances in which he characterized Brooks' former job in the course of determining that she had certain medical problems (R. 16), the ALJ stated that Brooks had the RFC to perform "light to medium" work.

■ Despite the ALJ's finding that Brooks' former job involved light to medium work, Secretary now urges this Court to remand this claim so that the ALJ might then find that the former occupation was only light work (D.Mem. 11 n. 8). Secre-

tary argues (D.Mem. 10) that the ALJ could have used the Dictionary of Occupational Titles ("DOT") to determine that Brooks' former job—"as generally required by employers throughout the national economy"—was "light work" and not "medium work." But that effort to change the ALJ's approach does violence to the principle that while an ALJ *"can"* look to the DOT for information regarding a claimant's former job, he or she is not *required* to rely either in part or solely on that description.[7]

■ Here the Vocational Assessment Specialist's report (R. 71) stated that Brooks' past "job appears to most closely resemble that of Lining Presser," which is described in DOT as a job that required "only light work activity."[8] However, that suggested conclusion was clearly not adopted by the ALJ in his determination of Brooks' past relevant job description. As already indicated, the record is plain that the ALJ found that Brooks' past relevant job involved "light to medium" exertion, not merely light exertion as suggested by the vocational specialist. No law or regulation mandates that the ALJ rely on, or limit himself to, the assessment of a vocational specialist when it conflicts with other testimony in the record.

■ Secretary's argument suggests that even though the ALJ had found the past relevant job to be of one exertional level,

6. In one place the ALJ characterizes the maximum weight lifted as being "approximately 20 pounds" (R. 16), while in the same sentence stating that the work was "light to medium." Although the first of those statements is problematic, the two statements are not necessarily inconsistent. In his findings, the ALJ does state that Brooks is capable of lifting weights that are 25 pounds or less (R. 17). That reinforces the ALJ's repeated characterization of the job as having an exertion level of light to medium and is not inconsistent with Brooks' being required to lift "approximately 20 pounds." Whether the ALJ deliberately or negligently blurred the distinction between 20 and 25 pounds by inserting the qualifier "approximately," such a remark is misplaced and misleading. Reg. §§ 1567(b) and (c) speak in terms of absolute maxima, as do the medical evaluations of Brooks.

7. Brooks goes to the other (and also impermissible) extreme, citing *Bell v. Bowen,* 658 F.Supp.

533, 538 (N.D.Ill.1987) for the proposition that Secretary cannot rely on the DOT description rather than on the claimant's description. *Bell, id.* states:

But [a claimant's] past relevant work, at least in this circuit, is the work she has actually done, not the description following her job title in a standard reference work [the DOT]. Even if *Bell* held that the ALJ cannot rely on the DOT description, that issue has been clarified by *Steward,* 858 F.2d at 1301, which clearly states that the ALJ *may* rely on the DOT to determine the claimant's past relevant job. But that was not the case here, where the ALJ expressly relied upon the claimant's description of her past relevant job rather than the DOT description.

8. Even so, the Vocational Assessment Specialist also acknowledged (*id.*):

The Claimant's exertional description of this job exceeds the limitations noted on the current Physical RFC.

but a level that does not match the ALJ's ultimate conclusion of "not disabled," a reviewing court should remand the case (perhaps repeatedly) until the ALJ has re-shaped his factual findings to fit the prede-termined "not disabled" decision.[9] That is simply not the kind of review authorized to this Court, nor is it a proper description of the ALJ's duty to determine the claimant's past relevant occupation.[10] Once the ALJ had the facts before him, he had the obli-gation under the law and regulations to determine what Brooks' past relevant work was. He did so, and this Court cannot overturn that finding unless it is unsup-ported by substantial evidence. It will be remembered that Section 405(g) (emphasis added) specifically states:

The findings of the Secretary as to *any* fact, if supported by substantial evi-dence, shall be conclusive....

 Whether this Court agrees with the ALJ's finding or whether it might have reached another conclusion is irrelevant. *Delgado v. Bowen,* 782 F.2d 79, 82 (7th Cir.1986) (citation omitted) teaches:

In reviewing the decision of the Secre-tary, we and the district court are obliged to review all the evidence con-tained in the record. However, we must accept the findings of the Secretary if supported by substantial evidence; we

may not decide anew, reweigh the evi-dence, or substitute our own judgment for that of the Secretary.

Here the ALJ found that Brooks' past rele-vant work was light to medium work. That finding was fully supported by Brooks' testimony, which was relied upon by the ALJ. ALJ Samuelson's finding on that issue, approved by Secretary, will therefore not be disturbed.

### Brooks' RFC

 Once the ALJ determined that Brooks' past relevant work required light to medium exertion, he examined her RFC to find whether she could still perform that work. In that respect the ALJ's findings show that he attempted to fit the current RFC to the exertion levels of the past relevant work. Thus at R. 16 he compared Brooks' ability to work in light of both her hypertension and heart condition against the standard of performing light to medi-um work. And at R. 17 he made the find-ing that Brooks has the RFC to perform her past relevant work:

except for work involving lifting greater than 25 pounds (20 CFR 404.1545).

But that finding is misleadingly stated, for it ignores the critical watershed defined by the Regulations—20 and not 25 pounds (see n. 4). All testimony and reports relat-

---

9. In fact, under Secretary's argument—which would require this Court to overturn a finding of the ALJ and hence Secretary—the ALJ could have as many as three chances to make findings to support the outcome. SSR 82–61 gives de-tails:

Three possible tests for determining whether or not a claimant retains the capacity to per-form his or her past relevant work are as follows:

1. Whether the claimant retains the capac-ity to perform a past relevant job based on a broad generic, occupational classification of that job....

\* \* \* \* \* \*

2. Whether the claimant retains the capac-ity to perform the particular functional de-mands and job duties of a particular past relevant job as he or she actually performed it.

\* \* \* \* \* \*

3. Whether the claimant retains the capac-ity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy.

10. Secretary has offered support for the propo-sition that a court should uphold Secretary's decision when he or she found that the claim-ant's relevant former work was different from that of the claimant's actual former job (see, e.g., *Martin v. Sullivan,* 901 F.2d 650, 653 (8th Cir.1990); *Arbogast v. Bowen,* 860 F.2d 1400, 1404 n. 3 (7th Cir.1988)). In such a case, it might be appropriate to affirm Secretary's deci-sion on any one of the tests contained in SSR 82–61 if the evidence in the record supports that determination (see *id.* at 1405 n. 6). But that is not an appropriate course of action here, where the ALJ found that the relevant work was light to medium and he obviously and correctly based that characterization on the express testi-mony of the claimant. Both in this case and in *Martin* and *Arbogast,* the common element is not the outcome but the simple rule, stated later in this paragraph of the text, that the court must uphold "the findings of the Secretary as to *any* fact, if supported by substantial evidence" (Sec-tion 405(g)).

ing to the Brooks' RFC confirm that she can lift only up to *20* pounds, and *no more.*

Thus, both medical evaluations (R. 115, 143) (capitals and emphasis in original) state that Brooks:

RETAINS *MAXIMUM* CAPACITIES TO:

1. LIFT (including upward pulling) and/or CARRY: ☑ 20 lbs
2. FREQUENTLY LIFT and/or CARRY: ☑ 10 lbs

Secretary suggests that those doctors' evaluations are not precise and can be further interpreted by the ALJ (D.Mem. 9, footnote omitted):

> Given the nature of the assessment forms, however, it is reasonable not to read the assessments as setting twenty pounds as an exact and absolute limitation. It is not unreasonable to infer that Drs. Kwedar and Gonzalez would believe that four or five times a day, Brooks could lift somewhere between twenty and twenty-five pounds.

That suggestion ignores—or, more accurately, distorts—the plain meaning of the words *"MAXIMUM* CAPACITIES" that are printed on the form (R. 115, 143; capitals and emphasis in originals).[11] It cannot be treated as happenstance, or as a mistake, that the evaluations comported with the ceiling level for light exertion as defined by Reg. § 1567(b) (see n. 4). If the doctors had wanted to state that Brooks could lift more than 20 but less than 25 pounds, they were free to do so on the form. But in the absence of such a notation, it is neither the ALJ's nor Secretary's role (nor this Court's) to change the unambiguous gloss on the plain language of the medical evidence.

It might be true that the ALJ could have believed that lifting 25 pounds is not significantly different from lifting 20 pounds, but that would not only ignore the line drawn by the Regulations but would step over into the realm of a medical judgment—one that the ALJ is not qualified to make.[12] As *Rousey v. Heckler,* 771 F.2d 1065, 1069 (7th Cir.1985) (citation omitted) said:

> But this argument ignores the reality of the Secretary's role in making disability determinations. These decisions must be based on testimony and medical evidence in the record or on the regulations. The ALJ cannot make his own independent medical determination about the claimant.

Neither may this Court. Diagnoses are for the doctors—not for the ALJ, the Secretary or this Court. Neither the Appeals Council nor the ALJ has the authority to play doctor and make a medical evaluation of Brooks' condition (*Schmidt v. Sullivan,* 914 F.2d 117, 118 (7th Cir.1990)). No ALJ may make medical judgments that are not supported by the medical evidence in the record (see, e.g., *Lundquist v. Heckler,* 670 F.Supp. 781, 786 (N.D.Ill.1985)). Furthermore, the ALJ may not disregard the physicians' opinions without explanation (*Salvador v. Sullivan,* 917 F.2d 13, 15 (9th Cir. 1990)).

In sum, based on the ALJ's finding that Brooks' former relevant work had an exertional level of light to medium and based on the uncontroverted evidence that Brooks could not now perform work at a medium exertional level, this Court finds—at step 4 of the Secretary's 5–step analysis—that Brooks must necessarily be found unable to perform her former occupation. What remains to be decided is whether this Court should remand the case to Secretary or reverse outright and order payment of benefits to Brooks.

---

11. Secretary's position also ignores the fact that the medical evaluation form (one doubtless designed by his own administrative people) also identifies the extent to which a claimant is capable of "frequent" carrying and lifting. Surely Brooks' 10 pound limit in that respect would not permit her to do a job that required the regular lifting of 25 pound packages four to eight times during each work day.

12. ALJ Samuelson at R. 16 seemed to base his judgment on his own evaluation of an ECG interpretation of December 9, 1988 (R. 112) and an exercise treadmill test of February 9, 1988 (R. 110). But those reports neither mention Brooks' ability to lift nor make any statement regarding her ability to perform work at a light or medium exertion level.

*Reversal of Secretary's Decision*

 Section 405(g) confers judicial authority to affirm, modify or reverse Secretary's decision "with or without remanding the cause for a rehearing." *Boyes v. Sullivan*, 901 F.2d 717, 722–23 (9th Cir.1989) (citations omitted) summarizes the predicate for reversal rather than remand:

> When the ALJ fails to point to clear and convincing reasons for rejecting the conclusion of the treating physician, or provide specific, legitimate reasons based on evidence for disregarding that conclusion, and when the administrative record is fully developed, benefits should be awarded.

To like effect, *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir.1989) (citations omitted) explains:

> [W]e generally award benefits when no useful purpose would be served by further administrative proceedings, or when the record has been fully developed and there is not sufficient evidence to support the ALJ's conclusion. Remand is appropriate "where additional administrative proceedings could remedy defects"; but where remand would only delay the receipt of benefits, judgment for the claimant is appropriate.

See also *Bell*, 658 F.Supp. at 538–39.

Here the step 4 outcome is clear: Brooks is unable to perform her former occupation. And the final step—step 5—likewise has only one answer. At that stage of the analysis it is equally plain that the ALJ must find Brooks to be disabled. Under Reg. Subpart P, Appendix 2, Table 1, Rule 201.01, Brooks—being of advanced age with limited education, and being unskilled with no other applicable work experience— is disabled.

Once again to summarize, from the perspective of the ALJ's decision that Brooks' past relevant work was light to medium, the record supports only one possible outcome: Brooks is entitled to benefits. And because no useful purpose would be served by remand, this Court reverses Secretary's decision.

*Conclusion*

There is no genuine issue of material fact in the record regarding Brooks' claim for disability. ALJ Samuelson found that Brooks' past relevant occupation required light to medium work, which by definition (and in accordance with the uncontroverted record) means that her former occupation required her to lift *more than* 20 pounds. But although the evidence in the record fully supports that finding, it does not support the ALJ's finding that Brooks still has the RFC to perform that work. Accordingly the evidence compels the conclusion that Brooks cannot perform the work of her past relevant occupation. Because Brooks is therefore classified as disabled, this case is reversed and remanded, and Secretary is directed promptly to establish a period of disability and to award the benefits owed.