Laverne E. BELL, Plaintiff,

v.

Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.

No. 84 C 10462.

United States District Court, N.D. Illinois, E.D.

March 31, 1987.

534

Sheldon I. Rubin, Chicago, Ill., for plaintiff.

James J. Kubik, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

This Social Security disability claim should not be a difficult case. Claimant Laverne Bell has severe chronic obstructive pulmonary disease, a cardiac condition, hypertension and cervical spinal problems which periodically require traction. Nevertheless this court has already remanded it twice: once on the Secretary's motion so that the Appeals Council could review it, and again on our order so the Appeals Council could explain and clarify its decision. *Bell v. Heckler*, No. 84 C 10462 (N.D.Ill. Jan. 14, 1986) [Available on WESTLAW, DCT database]. The Council

now has gathered more evidence and issued a new decision, still denying her claim. The additional evidence and explanations do not suffice. We reverse and award benefits.

Mrs. Bell worked for 42 years, the last 21 at Argonne National Laboratory, until Argonne found her disabled in February 1983. At Argonne she was a secretary from 1962 to 1966, a senior clerk to 1980, and a data processor thereafter. In the latter position she was assigned to the dog research program, where she encoded, entered, filed and retrieved data on radiation-induced changes in dogs. Her responsibilities also included assistance in pathology, which involved carrying large trays of tissue cultures, blocks and slides, and filing them for storage. The filing required her to reach and bend often, to climb stairs and ladders frequently, and to either climb over or move large equipment regularly. She ceased working when she could no longer complete most days because of shortness of breath, exhaustion and pain.

■ A Social Security disability claim is evaluated sequentially through up to five steps, although the evaluation stops if the claimant is found not disabled. 20 C.F.R. §§ 404.1520, 416.920; see Bowen v. City of New York, 476 U.S. ——, ——, 106 S.Ct. 2022, 2025, 90 L.Ed.2d 462 (1986) (describing the steps). The burden of proof of disability rests on the claimant through step four, a showing that she is unable to perform her past relevant work. Thereafter the burden shifts to the Secretary to show that she is nevertheless able to engage in some other type of substantial gainful employment. Bauzo v. Bowen, 803 F.2d 917, 923 (7th Cir.1986).

The Appeals Council found that Mrs. Bell had at least one severe impairment (step two). However, it concluded at step three that even considering the cumulative effect of her multiple impairments, her condition did not equal one of the disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. It then proceeded to the determination of her residual functional capacity which is relevant to both step four

and step five. 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). It found that despite her impairments Mrs. Bell retains the capacity for sedentary work. It then classified her past relevant work as sedentary, determined at step four that she could return to her past relevant work, and ceased the evaluation there, concluding that she was not disabled.

■ This court reviews Social Security determinations on a substantial evidence standard. Findings of fact must be upheld if they are supported by substantial evidence in the record as a whole; errors of law require reversal. See Sparks v. Bowen, 807 F.2d 616 (7th Cir.1986); Schaefer v. Heckler, 792 F.2d 81, 84 (7th Cir.1986). Previously this court did not understand how the Secretary's decision that Mrs. Bell had failed to meet her burden of showing that she could no longer do her past work could be supported by substantial evidence. The medical evidence appeared to strongly support disability. We remanded for an explanation, with particular attention to the evaluation at step three. For example, we could locate no findings about the combined effect of the claimant's impairments. Such findings, and evaluation of the equivalence of that combined effect to a listed impairment, are medical determinations which must be grounded on the testimony of a medical expert. Fox v. Heckler, 776 F.2d 738, 740–742 (7th Cir.1985); Honeysucker v. Bowen, 649 F.Supp. 1155, 1158–1159 (N.D.Ill.1986).

The Appeals Council responded by finding an expert, Dr. Paul G. Ventry, an internist on their own medical support staff. The new Appeals Council decision is based on his evaluation. The new decision has not, however, filled all the gaps in support which were present in the previous decision. Some things have been clarified. Most of the tests recording her forced expiratory volume and maximum voluntary ventilation turn out to be unacceptable under the detailed standards for such testing in 20 C.F.R. Part 404, Subpart P, Appendix 1, § 3.00(D).[1] The only acceptable tests

---

1. Brief explanations of the tests discussed here and below, and what they measure, are in *Evans v. Heckler*, 734 F.2d 1012, 1014 n. 1, 1015 n. 4 (4th Cir.1984).

show values significantly above those in the tables in § 3.02(B).

However, the measurement of her arterial blood gases during exercise (R. 214, 218) still appears to have been well within the limits of § 3.02(C), the applicable listing. At an arterial $PCO^2$ level of 32, her arterial $PO^2$ was 43, and at that level a $PO^2$ of 63 or less is listed in Table III–A as disabling. Indeed, according to Table III, a $PO^2$ of 43 is disabling at any $PCO^2$ level at any altitude. The Appeals Council disregarded that test because it "was not performed following bronchodilator therapy." (2d Suppl. R. 7.) But § 3.00(E)(2), which sets out the acceptable standards for this type of testing, says nothing about a bronchodilator requirement. Section 3.00(D), by contrast, quite specifically mentions the use of bronchodilators because the values in the tables assume the absence of bronchospasm. That instruction, however, applies only to other kinds of tests and to Tables I and II.

It may be that the absence of spasm is essential for readings for Table III as well. Dr. Ventry's comments on this test seem to be to that effect (2d Suppl.R. 11). However, the authors of the regulation applicable to this test knew how to say that, having just said it in the previous subsection, and did not. From our layman's point of view, an indication that a claimant cannot exercise without bronchial spasms seems quite relevant to a determination of disability. Moreover, Mrs. Bell's results are so low that the effect of a spasm on the readings would need to be massive to take her beyond the range of an impairment listed in Table III. In short, Mrs. Bell's figures on this test meet those in the relevant table, and the test methods fit the regulation. The decision that she did not meet her burden of showing equivalence to a listed impairment at step three still does not seem supported by substantial evidence.

Where the claimant has established through documentation acceptable under the applicable regulation that her impairment meets or exceeds a listing, but the Secretary has nevertheless denied benefits, the court should reverse at step three and award benefits. *Guzman v. Bowen,* 801 F.2d 273, 275 (7th Cir.1986); *Martin v. Heckler,* 748 F.2d 1027, 1035–1036 (5th Cir. 1984) (chronic obstructive pulmonary disease), *later proceeding,* 754 F.2d 1262 (5th Cir.1985). However, we do not reverse solely on that ground. The Council's determination at step four raises even more questions than the finding at step three. The Council has twice found that Mrs. Bell has the residual functional capacity for sedentary work despite the expert opinions of Dr. R.W. Winterfield, a cardiologist and the claimant's treating physician, and Dr. Glenda Flemister, an internist with a specialization in pulmonary diseases selected by the Secretary as an examining physician, that she does not.

Ability to work is not just a matter of whether a claimant has skills and could work on a "good day." Even temporarily disabling symptoms can make it impossible for a claimant to hold a job if the symptoms can be expected to recur frequently, disrupting work or forcing absences. *See, e.g., McGee v. Bowen,* 647 F.Supp. 1238, 1251–1252 (N.D.Ill.1986) (mental impairment); *Prill v. Schweiker,* 546 F.Supp. 1381, 1388 (N.D.Ill.1982) (epileptic seizures); *Tunstall v. Schweiker,* 511 F.Supp. 470, 474 (E.D.Pa.1981) (blackouts). Mrs. Bell, her co-workers and her superiors all testified to her repeated absences and inability to complete the workday while she was still working. Drs. Winterfield and Flemister, after extensive tests, concluded that her severe chronic obstructive pulmonary disease alone deprived her of the capacity to perform even sedentary work for any significant length of time. The Appeals Council disagreed, apparently because she admitted that at home she could sometimes do minimal household chores (1st Suppl.R. 128; *see also* 2d Suppl.R. 8). The ability to do chores at home from time to time is not substantial evidence to support a finding of the ability to do sedentary work, and cannot serve to contradict medical opinions about a claimant's capacity for

work. *Rousey v. Heckler*, 771 F.2d 1065, 1070 (7th Cir.1985). In our remand we questioned a determination of residual functional capacity which was apparently based on no medical opinion at all. *Bell*, No. 84 C 10462, slip op. at 7.

The Council's determination now has Dr. Ventry's opinion behind it, but that is still not enough. The critical issue for the second determination of residual functional capacity is the combined effect of her impairments, specifically the ability to treat her lung and heart conditions at the same time. Both Dr. Winterfield and Dr. Flemister believe that while her pulmonary condition, standing alone, could probably be improved with higher doses of medication, additional doses cannot be administered to a person with her cardiac condition and the medication given for it, without substantial risk of either toxic reaction or aggravation of that cardiac condition (R. 220; 2d Suppl.R. 14). Dr. Ventry, on the other hand, thinks that medications are available which will not adversely affect her heart or its treatment, though he did not specify them. He therefore concluded that with proper treatment she could do sedentary work (2d Suppl.R. 12). The Council chose to agree with Dr. Ventry's assessment.

This court also has difficulty finding substantial evidence in this record to support that determination. The Council was not, of course, bound by Dr. Winterfield's opinion merely because he is Mrs. Bell's treating physician. By now it is well established in this circuit that the agency may choose to rely on the opinion of a consulting physician who is a specialist, or otherwise has greater expertise in evaluating the impairment in question, over that of a treating physician who is a general practitioner. *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir.1985); *Garrison v. Heckler*, 765 F.2d 710, 713 (7th Cir.1985). However, neither *Stephens* nor *Garrison* held that the agency could simply pick and choose among physicians' opinions arbitrarily. The agency's decision still must be supported by substantial evidence on the record as a whole, including the evidence against that decision. *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir.1984);

*Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir.1984).

■ The opinion of a consulting physician who has never seen the patient may be substantial evidence against that of a physician who has if another factor is present which makes that opinion potentially more reliable, such as the consulting physician's greater expertise, or possible bias of the treating physician toward his patient. *Stephens,* 766 F.2d at 289; *Garrison,* 765 F.2d at 713–714. But when such a factor is not present, a contradictory report from a physician who has merely reviewed a file cannot outweigh the opinions of physicians who have actually examined the patient. *Scott v. Heckler,* 768 F.2d 172, 180 (7th Cir.1985), *overruled on other grounds, Bauzo,* 803 F.2d at 921; *Garrison,* 765 F.2d at 713; *Whitney v. Schweiker,* 695 F.2d 784, 789 (7th Cir.1982). Here both Dr. Winterfield and Dr. Flemister are specialists and both have examined Mrs. Bell. No one has questioned Dr. Winterfield's reliability or credibility, and the agency itself selected Dr. Flemister.

■ Moreover, Argonne National Laboratory found Mrs. Bell disabled before she even applied for benefits. The Secretary is not bound by that determination. 20 C.F.R. §§ 404.1504, 416.904. Nevertheless, as the finding of a governmental agency, it is at least entitled to substantial weight. *See, e.g., Falcon v. Heckler,* 732 F.2d 827, 831 (11th Cir.1984); *Rodriguez v. Schweiker,* 640 F.2d 682, 686 (5th Cir.1981); *Lewis v. Califano.* 616 F.2d 73, 76 (3d Cir.1980). Given the combined weight of Argonne's findings and the opinions of Dr. Winterfield and Flemister, Dr. Ventry's opinion, based only on Mrs. Bell's file, does not constitute substantial evidence to support the determination that she can still do sedentary work. *Cf. Scott,* 768 F.2d at 180; *Garfield,* 732 F.2d at 609–610.

■ Even if that determination had been correct, the Appeals Council made two errors of law in applying it. At step four, a determination of residual functional capacity is used to see if a claimant can still perform her "past relevant work." 20

C.F.R. §§ 404.1520(e), 416.920(e). The Council found that her past relevant work included her work as a secretary, which she last did in 1966. It also found that though her job was not sedentary, secretarial positions as defined in the Dictionary of Occupational Titles are sedentary. Thus it determined at step four that she was not disabled because she still had the capacity to do her past relevant work as they defined it (1st Suppl.R. 130; 2d Suppl.R. 9).

That determination is erroneous for two reasons. First, the work to which a claimant may be expected to return in a step four determination is not all the work she has ever done in her lifetime. Otherwise, the regulation would simply say "past work," instead of "past relevant work." By the Secretary's own regulations, work done 15 years or more before the time of the determination is ordinarily not relevant to a disability decision. 20 C.F.R. §§ 404.1565(a), 416.965(a); *accord Carter v. Heckler*, 712 F.2d 137, 141 (5th Cir.1983). Mrs. Bell last worked as a secretary over 20 years ago. She is not expected to turn the clock back that far.

■ Alternatively, the Council suggests that her past relevant work includes a clerk's duties, since her position until 1980 was that of a clerk. That work, too, is classified as sedentary in the Dictionary of Occupational Titles (1st Suppl.R. 130). But her past relevant work, at least in this circuit, is the work she has actually done, not the description following her job title in a standard reference work. The Appeals Council relied (1st Suppl. R. 130) on a Social Security ruling which holds that the functional demands of a job, for purposes of a step four determination, are defined by what employers generally require for such jobs as they are usually performed in the national economy. The principal source for those functional demands is the description of the job in the Dictionary of Occupational Titles. Soc. Sec. Rul. 82–61, 1982 Social Security Rulings 185. But agency rulings do not bind this court, and several Seventh Circuit decisions make it clear that the work that the claimant herself has done is the "past relevant work" for a step four

determination. *Bauzo*, 803 F.2d at 925–926; *Delgado v. Bowen*, 782 F.2d 79, 83 (7th Cir.1986); *Strittmatter v. Schweiker*, 729 F.2d 507, 509 (7th Cir.1984).

The physical demands of Mrs. Bell's actual jobs are what matter here. The Council has already found that those jobs were not sedentary, and that she cannot return to her jobs as she had to perform them (1st Suppl.R. 129–130). Given that finding, and applying the law of this circuit to it, she has met her burden of proof under step four that she can no longer do her past relevant work. *Cf. Strittmatter*, 729 F.2d at 509. The Council's determination to the contrary rests on errors of law and must be reversed.

The inquiry therefore should have proceeded to step five, with the burden of proof shifting to the Secretary to show that jobs which Mrs. Bell can perform exist in significant numbers in the national economy. Ordinarily we would remand for that determination. However, when the claimant has met her burden of proof at step four of showing that she cannot return to her past relevant work, and the Secretary's determination cannot be affirmed, the choice between a remand to the Secretary for further consideration and an outright award of benefits is within the discretion of the court. *Dixon v. Heckler*, 811 F.2d 506, 511 (10th Cir.1987); *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir.1984). This case calls for an award of benefits.

■ An award of benefits is appropriate when substantial evidence on the record as a whole indicates that the claimant is disabled, and the weight of the evidence indicates that a remand would only delay the receipt of benefits while serving no useful purpose. *Podedworny*, 745 F.2d at 222; *Parsons v. Heckler*, 739 F.2d 1334, 1341 (8th Cir.1984); *Tennant v. Schweiker*, 682 F.2d 707, 710 (8th Cir.1982). Reversal and an award of benefits is particularly indicated when administrative and judicial proceedings on the claim have already consumed a substantial amount of time, *Podedworny*, 745 F.2d at 223; when the Secretary has had an opportunity to develop the record on an outcome-determinative is-

sue and has failed to produce substantial evidence, *Broadbent v. Harris,* 698 F.2d 407, 414 (10th Cir.1983), *Tennant,* 682 F.2d at 710–711; or when it appears virtually impossible that the Secretary would be able to meet his burden of showing that the claimant can do jobs which exist in significant numbers in the national economy, *Dixon,* 811 F.2d at 511, *Podedworny,* 745 F.2d at 222–223.

■ Each of those factors is present here. Two remands to the Appeals Council have already consumed a substantial amount of time. Although the hearing never proceeded to step five, the Secretary has had two opportunities to develop the record on the issue of residual functional capacity, which is part of the evaluation at step four. 20 C.F.R. §§ 404.1520(e), 416.920(e). As we found above, there is not substantial evidence on this record to support a finding that Mrs. Bell has the residual functional capacity for sedentary work. Put another way, the only possible conclusion on this record is that she cannot perform sedentary work. The issue is outcome-determinative. Since there is no category of work on the scale which is less demanding than sedentary, 20 C.F.R. §§ 404.1567, 416.967, the Secretary cannot prove that she has the capacity for any kind of work. Thus, he cannot prove that she is not disabled. *See Rousey,* 771 F.2d at 1070.

We note also that even if it were possible for the Secretary to establish that Mrs. Bell could do sedentary work, it would still be virtually impossible for him to meet his burden at step five. The Council, since it stopped at step four, did not make the finding of transferability of skills under § 200.00(f) of Part 404, Subpart P, Appendix 2 necessary to an evaluation of Mrs. Bell's status on "the grid." Nevertheless, even without that finding we can determine that the Secretary almost certainly could not have met his burden. A claimant who is 60 or older and cannot do her past relevant work is not expected to make more than a minimal adjustment to a new job:

If you are close to retirement age (60–64) and have a severe impairment, we will

not consider you able to adjust to sedentary or light work unless you have skills which are highly marketable.

20 C.F.R. §§ 404.1563(d), 416.963(d). Mrs. Bell has a severe impairment, as determined at step two, and even the Council found that she is restricted to no more than sedentary work . (1st Suppl.R. 129; 2d Suppl.R. 8). Her past jobs were not sedentary (1st Suppl.R. 129–130). She is now 63 years old. Unless the Secretary could show that her skills are "highly marketable," the regulations would not permit a finding that her skills are transferable. *Tom v. Heckler,* 779 F.2d 1250, 1256 (7th Cir.1985). Without such a finding she must be found disabled. *Id.; see also Blake v. Secretary of Health and Human Services,* 528 F.Supp. 881, 887 (E.D.Mich. 1981).

The regulations do not define "highly marketable," and there is little case law on the subject. *Tom,* 779 F.2d at 1257 n. 11. Other regulations, however, would appear to mandate a consideration of the pool of persons with such skills and the claimant's likelihood of being able to compete with them. *Id.; see* 20 C.F.R. §§ 404.1563(d), 416.963(d). Mrs. Bell's skills are perhaps not outmoded by comparison to many other persons her age, since she worked as a data processor. But the pool of persons with such skills is very large, and most of them, we suspect, are far younger than Mrs. Bell. Although the determination would be for an administrative law judge in the first instance, we do not see how the Secretary could show that Mrs. Bell is highly marketable.

Another remand of this case would serve no useful purpose. There is only one possible outcome on this record. Mrs. Bell met her burden of establishing *per se* disability at step three. She also met her burden of showing that she cannot return to her past relevant work at step four, and the record shows that the Secretary could not meet his burden of showing her capable of other work at step five. Mrs. Bell is entitled to her benefits.

## Conclusion

Defendant's motion for summary judgment is denied. Plaintiff's motion for summary judgment is granted. The decision of the Secretary is reversed, and the Secretary is directed to establish a period of disability and award the benefits owed.