Walter PRESLAR, Plaintiff–Appellant,

v.

### SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant–Appellee.

No. 92–2371.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 12, 1993.

Decided Jan. 21, 1994.

---

John B. Bieske (argued and briefed), Warren, MI, for plaintiff-appellant.

Donna Morros Weinstein, Chief Counsel, Leslye E. Jones (briefed), Edward J. Kristof (argued), Department of Health and Human Services, Office of Gen. Counsel, Region V, Chicago, IL, William L. Woodard, Office of U.S. Atty., Detroit, MI, for defendant-appellee.

Before: MERRITT, Chief Judge; BOGGS, Circuit Judge; and ENGEL, Senior Circuit Judge.

MERRITT, Chief Judge.

Claimant Walter Preslar appeals the District Court's final judgment denying his summary judgment motion and granting summary judgment in favor of the defendant ("Secretary"). The District Court's judgment affirmed the Secretary's denial of Preslar's application for Social Security Disability Insurance Benefits. The main question before us is whether Preslar's skills as a light truck driver are "highly marketable" within the meaning of a Social Security regulation that prohibits disability benefits from being paid to 60–64 year old claimants if they "have skills which are highly marketable." Because the Secretary applied an improper legal standard when evaluating Preslar's application for benefits, and on that basis denied Preslar's application for benefits, we reverse.

**I.**

Walter Preslar applied for Disability Insurance Benefits and Supplemental Security Income on April 30, 1989, claiming that he was unable to work due to hip and back injuries, osteoarthritis and the late effects of musculoskeletal and connective tissue injuries. Preslar was 61 years old at the time of his application and had an eleventh grade education. The Social Security Administration denied his application initially and upon reconsideration.

On June 19, 1990, Preslar requested a *de novo* hearing before an Administrative Law Judge ("ALJ"). On December 11, 1990, the ALJ held a hearing at which Preslar appeared with counsel. Numerous medical re-

ports and tests were made part of the record, along with testimony from Preslar and a vocational expert. Preslar testified that he was unable to work due to pain in his shoulders, back and right hip. The relevant medical evidence indicated that Preslar had been treated for several years for problems with the left shoulder, right hip and back. The vocational expert testified that Preslar could not perform any of his past relevant work, which included food truck driving, custodial work, and bartending. Nevertheless, she testified that approximately 7,000 light truck driving jobs existed in the Michigan economy which Preslar could obtain and perform with no significant vocational adjustment.

The ALJ then asked the expert to assess whether Preslar's truck driving skills were "highly marketable." The expert testified:

A Your honor, I think that one way of looking at marketability is the notion of whether or not driving occupations go lacking in terms of their, their need to be filled by competent employees. The answer to that is, at this particular time there does not appear to be a huge need for drivers in terms of—the occupations are filled. So, the answer is, yes, they're marketable. Are they highly marketable in terms of his particular—this gentleman in terms of his age? The way I would answer it, Your Honor, is that an employer would not be forced to take someone with potential health problems, and/or the age factor that is included in this particular gentleman's situation.

Q So, what are you saying? That, most likely, an employer would hire a younger person?

A That is correct, Your Honor.

Q Of course, that is a hiring practice—

A That is correct, Your Honor.

Q —consideration. Not exactly legal consideration.

A That is correct, Your Honor.

Q So then your answer is that the, the driving skills, the operative driving skills are, in fact, highly marketable?

A They are, in fact, marketable, Your Honor. And, again, if we're, if we're simply looking at the occupation, in terms of

one has—a person has the skill, and an opening is available for driving, it is clear that this, this claimant has had a lot—many years of experience in driving. So from his ability to perform the occupation, it is marketable in that sense. He has the skills. If the opening is there, he could perform the occupation easily.

Q Okay. Very good. I think you've answered my question now.

In his January 7, 1991 decision, the ALJ concluded that Preslar was unable to perform his past relevant work, but that Preslar retained the capacity to do a full range of light work with only minor limitations, and that based on the vocational expert's testimony, Preslar had "highly marketable work skills," including truck driving, the ability to use hand and power tools, and the ability to use a cash register. Based on that finding, the ALJ concluded that Preslar was not disabled. The Appeals Council denied Preslar's request for review of the ALJ's decision, which became the final decision of the Secretary.

On November 21, 1991, Preslar sought judicial review of the Secretary's decision by filing this action in the United States District Court for the Eastern District of Michigan. Upon cross motions for summary judgment, the Magistrate found that the Secretary's decision was supported by substantial evidence, and recommended that the Secretary's motion be granted. The Magistrate rejected Preslar's argument that there was not substantial evidence to support the ALJ's finding that he possessed highly marketable truck driving skills. On September 30, 1992, the District Court approved the Magistrate's Report and Recommendation and entered judgment in favor of the Secretary. Preslar now appeals.

## II.

Preslar's arguments on appeal center on the Secretary's finding that his skills as a truck driver are "highly marketable." He contends that the vocational expert's testimony is not substantial evidence supporting that finding, and that an incorrect definition of the term was applied by the lower tribunals.

We will affirm the Secretary's decision to deny benefits as long as the Secretary applied correct legal standards in reaching the decision, and as long as the Secretary's findings of fact are supported by substantial evidence. 42 U.S.C.A. § 405(g) (West Supp. 1993); *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Brainard v. Secretary of Health and Human Services,* 889 F.2d 679, 681 (6th Cir. 1989).

### A.

■ To establish a compensable disability under the Social Security Act, a claimant must demonstrate that he is unable to engage in any substantial gainful activity because he has a medically determinable physical or mental impairment that can be expected to result in death or has lasted, or can be expected to last, for at least 12 continuous months. 42 U.S.C.A. § 1382c(a)(3)(A) (West 1992); 20 C.F.R. § 416.905(a) (1992). If a claimant establishes that he cannot perform his past relevant work, the burden is on the Secretary to establish that the claimant is not disabled by showing that the claimant has transferable skills which enable him to perform other work in the national economy. *Kirk v. Secretary of Health and Human Services,* 667 F.2d 524, 529 (6th Cir.1981), *cert. denied,* 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983).

■ The regulations provide a five-step sequential process to evaluate disability claims. The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled. *Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 2293 n. 5, 96 L.Ed.2d 119 (1987). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary. The steps are as follows:

1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.

3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.

4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.

5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*See* 20 C.F.R. § 404.1520 (1982). *See also Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1953, 76 L.Ed.2d 66 (1983); *Tyra v. Secretary of Health and Human Services,* 896 F.2d 1024, 1028–29 (6th Cir.1990).

There is no dispute that Preslar satisfied his burden under the first four steps. The question before us is whether the Secretary applied proper legal standards under step five, and if so, whether there is substantial evidence to support the Secretary's finding under step five that Preslar is not disabled. Because we conclude that an improper legal standard was applied, we do not reach the substantial evidence question.

### B.

Step five requires the Secretary to show that the claimant is able to do other work available in the national economy, considering among other factors, the claimant's age. 20 C.F.R. §§ 404.1520(f)(1), 404.1563, 416.-920(f)(1). A claimant's age is evaluated under the four-tiered structure of 20 C.F.R. § 404.1563. Age is presumed not to affect seriously the ability to adapt to new work situations for people under age 50. (20

C.F.R. § 404.1563(b)). However, the Secretary faces a heavier burden when denying disability benefits to older claimants. For persons "approaching advanced age" (50–54), the regulations recognize that age, in conjunction with a severe impairment and limited work experience, may seriously affect their ability to adjust to significant numbers of jobs in the economy. (20 C.F.R. § 404.-1563(c)). People of advanced age (55 and over) are considered at an age which significantly affects their ability to do substantial gainful activity; if they are severely impaired and cannot do medium work, they must have skills that can be transferred to less demanding jobs which exist in significant numbers in the national economy. (20 C.F.R. § 404.-1563(d)). Finally, for claimants close to retirement age, the regulations provide:

> If you are close to retirement age (60–64) and have a severe impairment, we will not consider you able to adjust to sedentary or light work unless you have skills which are *highly marketable.*

20 C.F.R. § 404.1563(d) (emphasis added). Preslar has maintained throughout this dispute that his skills as a light truck driver are not "highly marketable" and thus that he is disabled. The Secretary argues that the decision to deny benefits based upon the marketability of Preslar's skills must be upheld because it is supported by the vocational expert's testimony.

An assessment of whether or not a claimant's skills are highly marketable is difficult because of the absence of a definition of the term in the statutes, regulations or case law. It is evident that "highly marketable" skills are something more than "transferable" skills. Claimants age 55 and over, including those close to retirement age, must possess skills which transfer easily to other occupations. The "highly marketable" requirement, however, only applies to those age 60–64. 20 C.F.R. § 404.1563(d). *See also Terry v. Sullivan,* 903 F.2d 1273, 1279 (9th Cir.1990).

Another subsection of the regulations sheds additional light on how the Secretary is required to evaluate a claimant's age:

> (a) *General Age* refers to how old you are (your chronological age) and the extent to which your age affects your ability to adapt to a new work situation and to do work in competition with others....

Section 404.1563(a). Although vocational factors are to be viewed in terms of their effect on the ability to perform jobs rather than obtain them, (*see* 42 U.S.C. § 423(d)(2)), this section recognizes a direct relationship between age and the likelihood of employment. As claimants age, the Secretary must acknowledge that it becomes increasingly difficult to adapt to new work environments and to compete with younger, healthier, similarly-skilled workers. *Tom v. Heckler,* 779 F.2d 1250, 1257 n. 11 (7th Cir.1985). Finally, the four-tiered structure of 20 C.F.R. § 404.1563, in which the highly marketable requirement is found, places an increasingly heavy burden on the Secretary to show that the claimant is easily employable, recognizing that advancing age becomes an increasingly impenetrable barrier to obtaining employment. The regulation appears to be a codification of the notion that as one ages, "the advantage of having acquired ... certain skills or training may no longer offset the vocational disadvantage of age...." *Id.* (citing 43 Fed.Reg. 55,353 (Nov. 28, 1978)).

A number of courts have addressed the interpretation of the "highly marketable" requirement. For example, in *Renner v. Heckler,* the Ninth Circuit held that highly marketable skills and transferable skills are not synonymous; "highly marketable" is a separate and higher burden for the Secretary. 786 F.2d 1421, 1425 (9th Cir.1986). Citing a Seventh Circuit case, *Renner* stated that at the very least, the Secretary must establish the approximate number and locations of available jobs for which the claimant has transferable skills, and must establish that the claimant would be competitive in the job market for those jobs despite his age. *Id.* (citing *Tom v. Heckler,* 779 F.2d 1250, 1257 (7th Cir.1985)). In a more recent Ninth Circuit case, the court ruled that being competitive is not equivalent to possessing highly marketable skills. The record must reflect a higher degree of competitiveness: the "edge" the claimant's skills would give her "compared to persons half her age against whom

she would be competing." *Terry v. Sullivan,* 903 F.2d 1273, 1279 (9th Cir.1990).[1]

In an unpublished opinion, the Sixth Circuit found that the purpose of the highly marketable requirement in evaluating disability claims of persons nearing retirement is that the skills of an older person often cannot offset the vocational disadvantage of advancing age. The Court reasoned that when the pool of persons with skills similar to the claimant's is large, and when most in the pool are younger than the claimant, the claimant's skills cannot be highly marketable because it is reasonable to assume that the younger potential employees will be hired instead of the claimant. *Stone v. Secretary of Health and Human Services,* 823 F.2d 553 (6th Cir.1987). The *Stone* court illustrated this point with *Bell v. Bowen,* 658 F.Supp. 533 (N.D.Ill.1987). Mrs. Bell was a 63 year old woman with skills as a data processor. The *Bell* court found that the pool of people with data processing skills was very large, and that most potential employees with whom Mrs. Bell would be competing for work were much younger. The district court expressed doubt that the Secretary could prove (or the ALJ could find) that Mrs. Bell's data processing skills were highly marketable. On that basis, the court refused to remand and instead ruled that Mrs. Bell was entitled to benefits. *Id.* at 539.

Finally, in *Foster v. Secretary of Health and Human Services,* the claimant had worked as an industrial layout worker and inspector for General Motors, and had skills including blueprint reading, report writing, and technical mathematics skills. Due to severe chest pain, fatigue and having to lie down for several hours during the day, the claimant was no longer able to work. Despite these severe medical problems, the Secretary ruled that the claimant had skills which would enable him to perform jobs such as a clerk, tool inspector or estimator, and that those skills were highly marketable. *See* Magistrate's Report and Recommendation for *Foster v. Secretary of Health and Human Services,* No. 89–CV–40012–FL, 1990 WL 126475, *2–3, 1989 U.S.Dist. LEXIS 17081 *1–3 (E.D.Mich. Oct. 31, 1989).

The District Court disagreed with the Secretary's assessment of marketability, instead adopting the Magistrate's definition: highly marketable skills are "sufficiently unique and sufficiently coveted by employers [such] that a person possessing [claimant's] skills could readily sell them to a willing buyer." *Id.* 1990 WL 126475 at *6, 1989 U.S.Dist. LEXIS 17081 at *12. *Adopted by Foster,* 1990 WL 126475, 1990 U.S.Dist. LEXIS 11241 (E.D.Mich. April 18, 1990). The District Court found that the term "highly marketable" addresses both the number of available jobs requiring the skills and the relative scarcity of the number of persons possessing the skills. The claimant must be found to have some "special endowment" to offset the practical difficulties of obtaining employment for persons of his age. *Id.* 1990 WL 126475 at *5–6, 1989 U.S.Dist. LEXIS 17081 at *11–.13.

### C.

■ Implicit in the regulations ·and the judiciary's attempts to interpret "highly marketable" is the notion that such skills, which are sufficiently coveted by employers and sufficiently specialized or unique so as to offset the disadvantage of advancing age, should normally enable the claimant to obtain employment. We believe that this may be shown by establishing that the claimant's attainment of these skills required specialized or extensive training, education or experience which refined or developed the skills to the point that the claimant enjoys a significant advantage or edge over others competing for employment. Also probative is the relative abundance of jobs in the economy requiring the skills as compared to the relative scarcity of persons possessing the necessary skills. If a large number of potential

---

1. The *Terry* court chose to invoke its discretion and order payment of benefits rather than remanding the case for further development of the record after it found that the record before it did not reflect such a clear competitive "edge." The court reasoned that the claimant was 64 years old, that it was doubtful that a case could be made that her skills as a bookkeeper were highly marketable, that four years had elapsed since she had applied for benefits, and that any further delay would be unduly burdensome on her. *Id.* at 1280.

employees possess the skills, and jobs are not in abundance, the skills are probably not highly marketable, since it is doubtful that the older claimant will be hired over younger, healthier potential employees. In sum, we believe that highly marketable skills are those skills which are acquired through specialized or extensive education, training or experience, and which make the claimant's age not a deterrent or even a consideration in the hiring process. A claimant with highly marketable skills should have little difficulty obtaining employment.

## III.

■ Given our interpretation of the requirement of "highly marketable" skills, we now turn to the question of whether the proper legal standard to make this determination was applied below. The ALJ's Order relied solely upon the vocational expert's testimony to establish that Preslar had highly marketable skills, stating: "The vocational expert further testified that in terms of the truck driving work, . . . that the claimant's truck driving skills were highly marketable." However, the expert's testimony is not sufficient evidence to support a finding of highly marketable skills under our interpretation of that term. The expert did not describe any education, training or experience which helped Preslar to attain his skills, nor does she discuss any competitive edge that Preslar has over others competing for light truck driving jobs. In fact, the expert testified that there was not a large need for drivers, and that an employer would consider Preslar's age to his detriment.

The Magistrate's Report and Recommendation noted that the regulations failed to prove a definition of highly marketable.

Thus, the Report's only analysis of the meaning of the term was that marketability should be viewed "in light of a claimant's physical limitations, as well as the extent to which a claimant's age affects his or her ability to adapt to a new work situations." Based on this understanding of the term, the Magistrate stated that the vocational expert's testimony was sufficient to support the ALJ's finding that Preslar possessed highly marketable skills. Finally, the District Court adopted the Magistrate's Report without elaboration on the proper interpretation or definition of highly marketable, agreeing that the vocational expert's testimony and the rest of the record provided sufficient evidence to support the ALJ's decision. But as we stated above, the vocational expert's testimony does not support a finding of highly marketable according to our understanding of that term.

Neither the ALJ nor the lower court assessed whether Preslar's skills were in some way "specialized" or "coveted," nor was there a determination of the amount of training, education or experience required of Preslar to attain his skills. Moreover, no discussion or determination ever took place which would establish that Preslar enjoys some competitive "edge" over younger potential employees with whom Preslar would compete for truck driving jobs. We therefore conclude that Preslar's application for benefits must be reevaluated according to the definition of highly marketable set forth in this opinion.[2]

Accordingly, we REVERSE the judgment of the District Court and REMAND with directions to remand to the Secretary to reevaluate whether Preslar possesses highly marketable skills in accordance with this opinion.

---

**2.** We believe that the Secretary may have difficulty establishing that Preslar has highly marketable skills in accordance with this opinion. In *Dictionary of Occupational Titles,* U.S. Dept. of Labor (Vol. II, 4th Ed.Rev.1991) and *Selected Characteristics of Occupations Defined in Revised Dictionary of Occupational Titles,* U.S. Dept. of Labor (1993), the Department of Labor defines light truck driving, the occupation for which the vocational expert testified Preslar had highly marketable skills. It states that only minimal vocational training and a very low educational

level are necessary to perform the job. For example, *Selected Characteristics* states that necessary skills include knowing how to operate motor vehicles, coordinating hands, eyes and feet to control the vehicle, observing traffic regulations and using arithmetic for collecting delivery money. Such requirements would not satisfy the educational, training or experiential requirements set forth above. However, because there may be other evidence which would satisfy the "highly marketable" standard, it is necessary for the Secretary, and not this Court, to reevaluate Preslar's skills.

ENGEL, Senior Circuit Judge, concurring.

I concur in the reversal and remand for reconsideration. I am concerned, however, with certain language in Judge Merritt's opinion which infers that the skills of a light truck driver, per se, can not be deemed "highly marketable."

I would hold that as a matter of law, being a light truck driver is a skill within the meaning of the statute and regulations. *See Paulson v. Bowen,* 836 F.2d 1249, 1251 (9th Cir.1988); *Perez v. Heckler,* 777 F.2d 298, 303 (5th Cir.1985). All fifty states require a license in order to operate a motor vehicle. Tests are uniformly required to qualify for such a license. That the great mass of Americans may be licensed to drive motor vehicles does not detract from the fact that states require certain skills before granting such licenses. The skill required to operate a smaller truck is probably not as great as that for a semi-tractor, but surely it is greater than that for an ordinary car. To suggest that driving a small truck or van can never be a skill within the meaning of 20 C.F.R. § 404.1563(d), is in my judgment simply not in accordance with the use of the regulations and the language used therein. Whether such a skill in a given place, or at a given time, is "highly marketable" depends upon specific facts and circumstances usually to be drawn from expert testimony.

Judge Merritt has, I think, wisely refrained from commenting adversely upon the vocational expert's avoidance of expressing her opinion in terms of the ultimate question of when skills are not only marketable but "highly" marketable. It seems obvious to me from her testimony that the expert felt this would be invading the province of the administrative law judge. I understand that. At the same time I think that to meet the burden upon the Secretary, more specific findings must be made with regard to the market that exists for the claimant's skills.

I favor the approach taken by District Judge Stewart A. Newblatt in *Foster v. United States,* 1990 WL 126475, 1990 U.S.Dist. LEXIS 11241 (E.D.Mich. April 18, 1990), as quoted in Judge Merritt's opinion. Especially when compared with the standards for the increments of age which are defined for per-sons under fifty, between fifty and fifty-four, between fifty-five and sixty, and between sixty and sixty-four, it seems to me that the term "highly" is not meant to pertain to the marketability of the specific applicant in question based upon that applicant's respective disability, for this is already adequately dealt with by the regulations. Instead it is related essentially to market factors and the availability of job prospects. While I am uncertain about the language that skills must be "sufficiently unique," cited from the Commissioner's Report and Recommendation for *Foster v. Health and Human Resources,* No. 89–CV–40012–FL, 1990 WL 126475, *2–3, 1989 U.S.Dist. LEXIS 17081 *1–3 (E.D.Mich. Oct. 31, 1989), its further language that skills should be "sufficiently coveted by employers such that a person possessing claimant's skills could readily sell them to a willing buyer" is realistically and practically a very sound standard for defining skills that are "highly marketable." Furthermore, such a standard effectively, and rationally, distinguishes the criteria used to judge applicants aged 55–59 (mandating transferability only in cases where "jobs exist in significant numbers in the national economy") with the requirements to be met by those who are 60–64.

Judges cannot be entirely insensitive to the realities of modern-day life. While younger vehicle operators may possess greater physical strength and quicker reaction time, older drivers may on the other hand possess a far greater sense of responsibility, reliability, and respect for the law, factors derived from experience and training which may be of equal or even greater importance to potential employers. These factors can, and often do, offset any disadvantage which sheer age may impose upon the role of the aged in the competitive market, at least for a substantial number of available jobs.

Finally, the motivation for employment on the part of an applicant sixty to sixty-five years of age is quite different from that of a young wage earner. Older employees frequently are already receiving pensions and retirement benefits from former employers and are looking for means not only to augment their income but to enrich their lives

through continued contact with the working world. Employer's recognize this and recognize the economic advantages to be gained from hiring such persons.

These observations are by no means definitive. They are value judgments. I simply point them out as being among those considerations which can affect job marketability, in a given area and at a given time, and determine whether a claimant's skills are "sufficiently coveted by employers such that a person possessing claimant's skills could readily sell them to a willing buyer." A competent and well-skilled vocational expert should take these factors into consideration when evaluating whether the skill of being a light truck driver is a highly marketable one. It is my feeling that the failure of either the vocational expert or the magistrate to consider marketability in this comprehensive fashion compels reversal.