**Barbara SCHLEIF, Plaintiff–Appellant,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant–Appellee.**

No. 01–3045.

United States Court of Appeals, Seventh Circuit.

Argued March 6, 2002.

Decided March 15, 2002.

Before POSNER, EVANS, and WILLIAMS, Circuit Judges.

### ORDER

Barbara Schleif challenges the Social Security Administration's determination that her clinical depression is not disabling for purposes of receiving disability insurance benefits. Although Schleif correctly points out factual and legal errors in Administrative Law Judge John Pleuss' order denying her application for benefits, substantial evidence supports his conclusion that she is not disabled. Accordingly, we affirm.

### BACKGROUND

Schleif applied for disability insurance benefits in November 1997, claiming that she had been disabled since October 1997 due to a combination of a back injury and "a nervous condition", namely clinical depression. ALJ Pleuss denied Schleif's application and the Appeals Council denied her request for review. Schleif then filed suit in the district court challenging ALJ Pleuss' determination and presenting 20 separate alleged errors. The parties agreed to proceed before Magistrate Judge Crocker, who ultimately affirmed the SSA's decision. On appeal Schleif limits her attack to ALJ Pleuss' conclusion that her depression is not disabling.

#### A. Medical History

The evidence before ALJ Pleuss is as follows. Schleif was a mailing machine operator at Royle Printing. In September 1996 Schleif injured her back in a workplace accident. Because of her injury, Royle reassigned Schleif to "light duty"

but, about a year after the accident, she was laid off. While receiving treatment for her back injury, Schleif's primary care physician referred her to a psychiatrist, Dr. Ishii, because she reported symptoms that were more extreme than expected based on the objective medical evidence and she "generally seemed somewhat down and depressed."

Schleif met with Dr. Ishii for the first time on October 1, 1997. She reported that since her back injury she had experienced "dysphoria, irritability, anxiety with difficulty initiating sleep as well as intermittent awakening." She also told Dr. Ishii that her ability to concentrate, remember things, and motivate herself had decreased, that she was tired all the time, and that she experienced fleeting passive suicidal thoughts. Finally, she recounted a history of sexual and physical abuse by her father, and physical abuse by two prior husbands. Schleif's current husband is not abusive.

Dr. Ishii diagnosed Schleif with underlying depressive disorder not otherwise specified with dependent personality features. He prescribed 50 mg of Zoloft daily and referred Schleif for follow-up therapy with Barbara Brigham.

Schleif had a follow-up appointment with Dr. Ishii on October 29, 1997. She reported taking only 25 mg of Zoloft daily due to unpleasant side effects at the prescribed dose, but also that "her symptoms of depression [were] much better and that she [was] able to focus better and that her mood [was] improved." Dr. Ishii encouraged Schleif to take the prescribed dose of her medication and "continue following up with Barbara Brigham for individual therapy."

At some point Schleif applied for benefits from the Wisconsin Division of Vocational Rehabilitation ("WDVR"). Two documents from the WDVR process are relevant to this appeal. On December 5, 1997, Case Manager Betty Arntson produced a report in which she opined that "[b]ased on [Schleif's] permanent physical capacity restrictions .... [s]he would not be able to work competitively and provide for herself financially, at this time." Arntson opined that Schleif should be referred to a home-based employment program and also that "[c]lerical support or telemarketing activities would be appropriate."

In addition to Arntson's report, as part of the WDVR application process Schleif submitted an activities questionnaire completed by her friend, Zonia Ryniewicz. On the questionnaire, Ryniewicz explains that she is a family friend who sees Schleif daily and helps in whatever way is necessary. Ryniewicz reported that Schleif had become very "stressed out and nervous" due to her financial difficulties. Ryniewicz stated that, since her injury, Schleif "is withdrawing from the public. She feels she can't do the things she used to do with people. So she is trying to be a loner." She also estimated that Schleif cooks, reads, grooms herself, and talks on the phone daily; cleans her house, shops, visits relatives, and pays her bills weekly; and babysits her grandchildren, visits friends, talks to neighbors, and goes out to eat monthly. Finally, Ryniewicz disclosed that Schleif drives weekly, but only when "forced" to do so.

Schleif saw Dr. Ishii again on February 2, 1998. His treatment notes state that Schleif "continues to report vegetative symptoms of depression including tearfulness, problems sleeping at night, decreased appetite, hopelessness, but no suicidally [sic]." He again encouraged her to continue taking 50 mg of Zoloft daily, but does not mention Barbara Brigham.

Three days later, at Schleif's request, Dr. Ishii wrote a letter to her lawyer expressing his opinion of her prognosis.

I am stating with a high degree of medically [sic] probability that [Schleif] is indeed disabled and is going to be unable to perform any substantial gainful employment because of severe depression and ongoing pain [from her injury]. She has a history of severe psychological trauma, and I concur with Dr. Hansell that Ms. Schleif is not able to work as of October 18, 1997.

Ongoing symptoms of her severe depression include daily tearfulness, dysphoria, hopelessness, anxiety and fear that some harm is going to come to her and poor concentration, memory and motivation.

On February 4, 1998 Doctor Warrior, a consulting physician, filled out a Mental Residual Functional Capacity Assessment on Schleif. Actually, Dr. Warrior did not evaluate Schleif on a single one of the 20 pre-printed questions on the standardized form, and in the narrative section she simply inserted a portion of a Wisconsin Department of Health and Social Services report.

The final treatment note in the record by Dr. Ishii states that Schleif's symptoms continue unchanged. He also reports that "[s]he continues to suffer from catastrophic stressors of lower back and leg pain, wrist pain and not being able to work. . . . I will try to maintain her on medications even though really the main cause of this is psychosocial stress."

In July 1998 another consulting physician, Doctor Spears, performed a Mental Residual Functional Capacity Assessment of Schleif. Dr. Spears concluded that Schleif was not significantly limited in her ability to perform a majority of work functions listed on the evaluation form. In fact, at worst, Dr. Spears believed that Schleif was only moderately limited in her ability to understand and remember detailed instructions, carry out detailed instructions, accept instruction and criticism from a supervisor, respond appropriately to changes in the work setting, and set realistic goals. He concluded that she was capable of "unskilled, low stress work." Dr. Spears based his opinions on Dr. Ishii's treatment notes.

Finally, on March 1, 1999, Dr. Ishii submitted a "Practitioner's Report" to the Wisconsin Department of Industry, Labor and Human Relations. The form refers the reader to a previously submitted form, not contained in the record, for a description of Schleif's physical or mental disability and diagnosis and the event that caused her disability. It does, however, state Dr. Ishii's opinion that Schleif is 100% permanently disabled due to a workplace injury.

ALJ Pleuss held a hearing on March 9, 1999. Schleif and a vocation expert were the only witnesses. Schleif testified that she had discontinued the Zoloft because of stomach trouble, but was taking Prozac which was sometimes helpful. She also reported that she had been receiving counseling from Ginger Hansell, but she stopped in November 1998 when her insurance "ran out". When asked how her depression affected her, Schleif said, "Some days I can't get myself to do nothing. I, I won't change my clothes for two or three days knowing I have to go up and down stairs."

ALJ Pleuss proposed a hypothetical person to the vocational expert. The hypothetical person was Schleif's age, had her education and past work experience, and had various physical limitations due to a permanent back injury. Additionally, ALJ Pleuss instructed the expert to "assume that the individual, because of depression, would be limited but satisfactory with regard to the individual's ability to interact with supervisors, maintain attention, and concentrate, understand, remember, and carry out detailed job instructions, and

demonstrate reliability." The vocational expert estimated that 13,500 jobs exist in Wisconsin that the hypothetical person could perform: 2,500 jobs as a security guard, 2,000 messenger jobs, and 9,000 jobs as a file clerk.

## B. ALJ Pleuss' Decision

After discussing the five-step framework for analyzing disability claims, in accordance with step one, ALJ Pleuss concluded that Schleif was not engaged in substantial gainful employment. The ALJ then reviewed the objective medical evidence and concluded that Schleif's impairments did not meet or equal an impairment listed by the SSA as constituting a disability, as required at step three.

ALJ Pleuss next reviewed the evidence of Schleif's mental disorder and held that neither Dr. Ishii nor Schleif were entirely reliable. He discounted Dr. Ishii's opinion that Schleif was disabled because (1) the doctor saw Schleif only once before rendering that opinion, (2) the issue of Schleif's disability is reserved for the SSA, (3) the doctor's assessment was inconsistent with his treatment note of October 29, 1997, (4) there was no evidence that Schleif attended psychotherapy sessions after October 1997 and before February 1998, and (5) in June 1998 the doctor concluded that Schleif's depression was caused by psychosocial stress.

ALJ Pleuss wholly disregarded Schleif's testimony about the impact of her impairments. He stated that her testimony conflicted in several respects with that of her friend, Ryniewicz. For example, whereas Schleif said she could rarely perform any housework and that her family did most of it, Ryniewicz reported that Schleif could wash, dry, and fold laundry, load the dishwasher, dust furniture, and cook meals. Additionally, Schleif said she only left her home when necessary because of the pain, but Ryniewicz stated that Schleif went grocery shopping weekly, and that she attended a weekly flea market for entertainment. Further, the ALJ noted that three physicians, Doctors Hussussian, Yuska, and Hansell, all opined that Schleif's subjective reports of pain were out of proportion to that supported by the objective medical evidence. And Dr. Hussussian went so far as to imply that Schleif was a bad actress, describing her as having a "dramatic physical presentation" and her symptoms as an "overexaggeration" with "absolutely no true anatomical delineation".

As a result of his discrediting Dr. Ishii and Schleif, ALJ Pleuss relied on the evaluations of Doctors Spears and Warrior for his determination that Schleif's depression is not disabling. He noted that both doctors believed Schleif could perform "routine, low stress, repetitive work."

After reviewing the evidence and its credibility, ALJ Pleuss determined that Schleif would be unable to perform her previous work. He then held that Schleif's mental impairment resulted in the non-exertional limitations he posed to the vocational expert. The ALJ concluded, based on the vocational expert's testimony, that Schleif has the residual functional capacity to work as a security guard, a messenger, or a file clerk. Accordingly, the ALJ held that Schleif is not disabled.

## ANALYSIS

■ We will not disturb the SSA's determination that Schleif is not disabled so long as that conclusion is supported by substantial evidence and is not the result of a legal error. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir.2001); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir.2000). Substantial evidence is evidence that a reasonable mind could accept as adequate to support the conclusion. *Dixon*, 270 F.3d

at 1176. "This court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the [SSA]." *Godbey v. Apfel*, 238 F.3d 803, 807 (7th Cir.2000) (quotation and citation omitted). On the other hand, we will not simply rubber-stamp the SSA's decision without a critical review of the evidence. *Clifford*, 227 F.3d at 869. This court examines whether the ALJ has "built a bridge from the evidence to his conclusion." *Godbey*, 238 F.3d at 807; *see also Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir.1995) ("An ALJ ... must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning.").

Schleif attacks the SSA's decision on four grounds. She claims that ALJ Pleuss never ruled on whether she has a severe impairment, did not give controlling weight to Dr. Ishii's opinion that she is disabled, relied on Doctors Spears and Warrior's unreliable opinions that she is not disabled, and did not discuss the WDVR's opinion that she is disabled.

### 1. Error at Step Two

Schleif argues that the ALJ's decision must be reversed because he failed to explicitly determine whether she has a severe impairment as required by the second step of the framework for establishing a disability. 20 C.F.R. § 416.920(c). She claims that any error of law warrants automatic reversal irrespective of the evidence supporting the factual finding.

Schleif's interpretation of the ALJ's decision regarding this claim is erroneous. Although the decision does not contain a single sentence expressing ALJ Pleuss' decision that Schleif has a severe impairment, it refers to her impairments as severe. (*See, e.g.,* Admin. R. at 22, Decision at 11 ("Next, I must determine whether

the claimant, despite her severe impairment ...")). Further, as the district court concluded, the simple fact that the ALJ did make findings with regard to the third, fourth, and fifth steps means that he necessarily decided Schleif has a severe impairment. *See Clifford*, 227 F.3d at 868 ("A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that the claimant is not disabled.") (quotation omitted). Finally, even if the ALJ improperly skipped step two, Schleif could only have benefitted by that error.

### 2. Disregarding Dr. Ishii's Opinion that Schleif is Disabled

Schleif next attacks each of the grounds ALJ Pleuss gave for discrediting Dr. Ishii's opinion that she is disabled. She claims each reason is either factually or legally mistaken. For example, she maintains that ALJ Pleuss erroneously held that she had only seen Dr. Ishii once before he opined she was disabled, but in actuality she had seen him three times before he issued his opinion. Likewise, she challenges his conclusion that she did not receive psychotherapy between October 1997 and February 1998, when in fact she was seeing Brigham or Ginger Hansell during that time.

Schleif is right: ALJ Pleuss made some factual mistakes when evaluating Dr. Ishii's reports. But at least two of his reasons for discrediting Dr. Ishii's opinion that Schleif is disabled are valid. First, ALJ Pleuss stated that the decision whether Schleif is disabled is reserved to him, not Dr. Ishii. *See Dixon*, 270 F.3d at 1177 ("The [SSA], not a doctor selected by the claimant to treat her, decides whether a claimant is disabled."). This is entirely correct. Whether or not Schleif is disabled for purposes of receiving SSA benefits is a legal determination to be made by

the ALJ according to SSA standards. Dr. Ishii's opinion that Schleif is disabled is certainly not determinative of that legal issue.

The analysis of this claim could stop here. ALJ Pleuss rejected Dr. Ishii's opinion only to the extent that it stated a legal conclusion reserved to the SSA. But substantial evidence also supports ALJ Pleuss' conclusion that the opinion is inconsistent with Dr. Ishii's treatment notes and other evidence in the record. An ALJ need not give controlling weight to a treating physician's opinion unless that opinion "is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Clifford*, 227 F.3d at 870; *see also Dixon*, 270 F.3d at 1177 ("[A] claimant is not entitled to disability benefits simply because her physician states that she is 'disabled' or unable to work.").

Schleif again claims that these "consistency" conclusions are factually or legally mistaken. She argues that Dr. Ishii's disability opinion was not inconsistent with his earlier opinion regarding the extent of her illness because depression is cyclical, it ebbs and flows. It is not reasonable to interpret Ishii's notes this way Dr. Ishii's October 29, 1997 treatment note describes moderate improvement from Schleif's first visit. The remaining treatment notes then indicate a steady plateau. His February 2, 1998 treatment note shows Schleif reporting symptoms virtually identical to those she reports on June 12, 1998.

Furthermore, Dr. Ishii's treatment notes—basically the only medical findings in the record regarding the signs and symptoms of Schleif's depression—rely almost entirely on Schleif's description of her symptoms. An ALJ is entitled to give less credence to portions of a treating physician's report that rely on a claimant's subjective complaints. *Godbey*, 238 F.3d at 808; *Diaz*, 55 F.3d at 308. ALJ Pleuss

found Schleif less than credible when reporting her symptoms, a conclusion that she does not challenge on appeal.

At base, the record simply does not describe a woman crippled by depression. Dr. Ishii notes that Schleif is tearful, has trouble sleeping, and has difficulty with her memory; Ryniewicz reports that Schleif performs those daily tasks that her back pain, not her depression, does not impede. At most, Ryniewicz suggests that Schleif is withdrawing socially because of her depression, but still plays cards with friends, talks on the phone daily, and goes to the flea market every weekend. *Compare Wilder v. Apfel*, 153 F.3d 799, (7th Cir.1998) (claimant would forget she had to wear a uniform to work; could not drive the half mile to work without getting lost; no longer cooked because she let everything burn; could not shop for herself; could not care for, or even hold, her adopted children; could not attend her finances; and at work needed someone to sit with her constantly: her only activities outside of work were smoking and watching tv).

In sum, ALJ Pleuss disregarded Dr. Ishii's opinion only to the extent of the doctor's legal conclusion that Schleif is disabled. And the ALJ adequately articulated valid reasons for discounting Dr. Ishii's opinion regarding that legal determination.

### 3. ALJ's Reliance on Consulting Physicians' Reports

After discounting Dr. Ishii's disability opinion, ALJ Pleuss relied on reports by Drs. Warrior and Spears to conclude that Schleif's depression imposed only minor non-exertional limitations on her ability to work. Schleif complains that the consulting physicians' reports were unreliable and, for this reason, insufficient to support the ALJ's conclusion.

Schleif attacks Dr. Warrior's report on the ground that she did not perform it, apparently a state agency social worker performed the evaluation. Social Security regulations state that a "psychological consultant used in cases where there is evidence of a mental impairment must be a qualified psychologist." 20 C.F.R. § 404.1526(c). The SSA makes no serious effort to defend ALJ Pleuss' reliance on Dr. Warrior's report, it argues only that Schleif cites nothing precluding a physician from adopting the opinions of a non-physician. (SSA Br. at 17 n. 8.) The regulation is clear, however, and ALJ Pleuss erred in relying on Dr. Warrior's opinion.

This leaves Dr. Spears' report in support of the ALJ's finding that Schleif's depression only minimally limits her ability to work. Schleif argues that Dr. Spears' report is entitled to no weight because he never met her.[1] On this basis she concludes that the ALJ unreasonably credited Dr. Spears' opinion over Dr. Ishii's.

Ignoring Dr. Ishii's opinion that Schleif is disabled, Dr. Ishii's only other opinion is that Schleif's depression is caused by psychosocial factors. Aside from that, his treatment notes discuss only her symptoms, what she talked about, and his recommended treatment. Notably, Dr. Spears' report and Dr. Ishii's treatment notes appear fairly consistent with one another (and with Ryniewicz's statements regarding Schleif's activities). Dr. Ishii reported Schleif's memory problems and Dr.

Spears noted she was limited in her ability to understand, remember, and carry out detailed instructions; Dr. Ishii notes that Schleif is tearful and hopeless, Ryniewicz says Schleif is nervous and stressed out, and Dr. Spears opines that she may have difficulty responding appropriately to criticism in the workplace or setting realistic goals. The ALJ reasonably relied on Dr. Spears' opinion, based on and consistent with Dr. Ishii's notes, that Schleif could perform low stress, unskilled work.

Schleif also complains that Dr. Spears does not mention her history of physical and sexual abuse. This is not surprising, however, because only Dr. Ishii's first treatment note even mentions her history of abuse and nothing in the record discusses how this history impacts her depression or her ability to work.

### 4. ALJ's Failure to Discuss WDVR Report

Schleif complains that ALJ Pleuss completely ignored the WDVR opinion that "[s]he would not be able to work competitively and provide for herself financially, at this time." Leaving aside the problem that this opinion seems to have been based on Schleif's physical limitation due to her back injury, the very issue she explicitly waives on appeal, ALJ Pleuss did consider the WDVR's report, but focused on its recommendation that Schleif should be able to "pursue some sort of clerical or telemarketing activity."

---

1. Schleif cites *Bell v. Bowen,* 658 F.Supp. 533 (N.D.Ill.1987) for the proposition that "a contradictory report from a physician who has merely reviewed a file cannot outweigh the opinions of physicians who have actually examined the patient.' " (Schleif Br. at 22 (quoting *Bell,* 658 F.Supp. at 537; emphasis Schleif's)). Obviously, *Bell* is not binding on this court. More importantly, Schleif misrepresents the quote. The entire quote reads

The opinion of a consulting physician who has never seen the patient may be substantial evidence against that of a physician who has if another factor is present which makes that opinion potentially more reliable, such as. . . . But when such a factor is not present, a contradictory report from a physician who has merely reviewed a file cannot outweigh the opinions of physicians who have actually examined the patient. *Id.* (citations omitted).

More importantly, an "ALJ is not bound by findings made by either a governmental or nongovernmental agency concerning whether the claimant is disabled." *Clifford*, 227 F.3d at 874. As demonstrated here, different agencies have different standards for determining whether a claimant can work or is disabled. ALJ Pleuss' conclusion, based on Dr. Spears' report, that Schleif could perform low stress, unskilled work is consistent with the WDVR's opinion that Schleif should pursue clerical or telemarketing work.

## CONCLUSION

ALJ Pleuss implicitly decided that Schleif has a severe impairment. Additionally, he adequately justified his decision to disregard Dr. Ishii's opinion that Schleif is disabled. Although ALJ Pleuss improperly relied on Dr. Warrior's opinion that Schleif could work, Dr. Spears' opinion that Schleif could perform routine, low stress work is supported by substantial evidence and ALJ Pleuss properly relied on it in denying Schleif's application for benefits. Finally, ALJ Pleuss did consider the WDVR report. Accordingly, we affirm the district court judgment.